**Jesús Pérez PÉREZ, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**Civ. No. 664-70.**

United States District Court,
D. Puerto Rico.

Oct. 17, 1972.

Antonio M. Bird, San Juan, P. R., for plaintiff.

Ignacio Rivera-Cordero, Asst. U. S. Atty., San Juan, P. R., for defendant.

## MEMORANDUM AND ORDER

CANCIO, Chief Judge.

Claimant was born August 11, 1899, in Spain and entered Puerto Rico in 1915. He completed elementary school and thereafter studied accounting. He worked as a grocery salesman until 1929 at which time he went into partnership with his brother Marcelino in the grocery business. In 1948 the firm was organized as Ferreteria Europa Inc. with its business address as 1462 Ponce de León Avenue, Santurce.

Until 1964, plaintiff indicated that he worked an 8 hour day from 8:30 A.M. to 5:00 P.M. (Tr. 53). Plaintiff has alleged that he retired in January 1965. However, he continued to report to work daily starting at 8:30 in the morning and remained at the place of business until about noon. Plaintiff has stated that most of the work he did while at the store was of a personal nature, and was not connected with the corporation. However, he has stated "the firm Ferreteria Europa Inc. is such a well known firm in commercial circles that the credit would suffer if we, the brothers Marcelino and Jesús, didn't appear in the board. For this reason, we must make an appearance and continue being in the board even though we don't do much". The routine of reporting to the office described above, was followed by plaintiff in all months except for May and June 1965, when plaintiff was on vacation, and from August through November 1967, at which time he was on full time jury duty.

At the time of the alleged retirement, plaintiff retained his titles as Vice President and Treasurer of the Corporation, and was paid a salary of $100 per month admittedly to conform with the Social Security Earnings requirements. In 1967, plaintiff resigned from office as Vice President and Treasurer of the Corporation as a direct result of the suspension of his benefits by the Social Se-

curity Administration. At that time, plaintiff relates, he moved his desk from the executive office area to another section of the office and that his nephew, Avelino Pérez Méndez, previously corporate secretary, assumed the titles and duties of corporate Vice President and Treasurer.

Plaintiff testified that he estimated his amount of time working for the corporation as between 7 and 9 hours weekly. Since June 1967, it is alleged that plaintiff spent only one or two hours weekly at the business, and that he has received no salary.

In addition to his salary, plaintiff has received dividends from the corporation. As tabulated by his attorney, plaintiff's salary and dividend income for recent years are as follows (Tr. 433):

| Year | Salary | Dividends |
|------|--------|-----------|
| 1962 | $6,000 | $2,000 |
| 1963 | 6,000 | 3,500 |
| 1964 | 6,000 | None |
| 1965 | 1,200 | 5,000 |
| 1966 | 1,200 | 4,000 |
| 1967 | 600 | None |
| 1968 | None | 4,000 |

By his own statements, the range of duties performed by plaintiff since 1965 include "acting as president if the president is absent", a role which assumes significance in view of plaintiff's statement that his brother Marcelino retired earlier than plaintiff, and had "much more personal business to attend to than I" (Tr. 58). Also, plaintiff countersigns checks and takes care of the cash register if there is a rush period (Tr. 117–118).

As provided in section 203(b) of the Act, the so-called "retirement test", where an old-age insurance beneficiary continues to have earnings after becoming entitled to benefits, deductions are to be imposed against his benefits until the amount of the deductions equals the amount of his excess earnings as determined under section 203(f). Section 203(f) as in effect during the year 1965 provided that if an entitled individual had annual earnings of more than $1,200 (increased to $1,500 for 1966 and 1967;

$1,680 for 1968), $1.00 of benefits was to be withheld for every $2.00 of earnings for the first $500 of such excess ($1,200 after 1965) and benefits were to be reduced on a dollar for dollar basis for any further earnings.

This section further provided that deductions may not be imposed against benefits for any month in which the individual was over age 72, or did not render services for wages of more than $100 ($125 for 1966 and 1967, $140 for 1968) or did not engage in self-employment. Pursuant to section 203(f)(4) an individual having excess earnings is presumed to have engaged in self-employment or rendered services for wages sufficient to impose deductions for such month unless it is shown to the satisfaction of the Secretary that no substantial services in self-employment or services for wages were rendered in such month.

■■ There is no question that an individual is free to arrange his business affairs in any way he wishes even if his purpose is to thereby gain greater social security benefits than would otherwise be available. However, where it is apparent that an individual has acted with this particular purpose in mind, it is incumbent upon the Secretary to closely scrutinize the transactions and subsequent relationship of the parties involved to assure that the purported method of operation is one of substance and not merely form. It is well established that where the Secretary finds that the realities of the situation do not accord with the alleged arrangement, the parties are to be treated as reality dictates. Determinations of an individual's earnings for social security purposes must be related to the reality of his connection with the labor market and cannot be based on paper allocations of income. Dondero v. Celebrezze, 312 F.2d 677 (2nd Cir. 1963); Newman v. Celebrezze, 310 F.2d 780 (2d Cir. 1962); Poss v. Ribicoff, 289 F.2d 10 (2d Cir. 1961), cert. den. 368 U.S. 902, 82 S.Ct. 178, 7 L.Ed.2d 96 (1962), rehg. den. 368 U.S. 963, 82 S.Ct. 393, 7 L.Ed.2d 393 (1962); Musselman v. Gardner, CCH,

UIR Vol. 1A Fed. para. 14,913 (N.D.N.Y.1967); Tarpinian v. Gardner, CCH, UIR Vol. 1A Fed. para. 14,276 (N.D.N.Y.1965); Hellberg v. Celebrezze, 245 F.Supp. 390 (W.D.Mo.1965); Stavropoulos v. Ribicoff, CCH, UIR Vol. 1A Fed. para. 14,273 (S.D.N.Y.1962).

The Secretary determined that, except for May and June 1965, when plaintiff was on vacation, and from August 1967, through November 1967, inclusive, when he was on full time jury duty, plaintiff rendered substantial services for wages in each month from January 1965 through June 1969 (the date of the hearing examiner's decision).

■ In determining whether retirement occurred, "the critical factor for evaluation is the actual limitation of activities and services rendered after the alleged retirement with comparison to that beforehand." Levine v. Gardner, CCH, UIR Vol. 1A Fed. para. 14,711 (N.D.N.Y.1967). Among the criteria to be considered are the degree of decrease in time which the individual spent at the premises, the amount of work actually performed after the alleged retirement, and whether another employee was hired to perform some of the work no longer done by plaintiff. Levine v. Gardner, supra; Hellberg v. Celebrezze, supra.

■ The record shows that no additional employees were added to Ferriteria Europa Inc. on the executive level to replace plaintiff. Rather, the only demonstrated change was the transfer of the titles of Vice President and Treasurer from plaintiff to his nephew, A. Pérez Méndez, and even this change did not occur until 1967. On the basis of the foregoing factors, the Secretary determined that plaintiff rendered valuable executive services, worth in excess of the token wages he received after January 1, 1965.

While it is evident that plaintiff put in approximately half the time he had worked previously for the business, his salary was cut to 20% of its former amount, from $6,000 to $1,200 per year. Such drop in wages coincided with an increase in the dividends paid to plaintiff by the corporation. Thus, while plaintiff's salary was reduced in 1965, the dividends he received from the corporation increased from none to $5,000; thus, the net change in his total share of the business was an increase of $200 (Tr. 433). Plaintiff and his brother, as virtual sole owners of the business, were in a position to arrange such matters as salaries to themselves and dividends at will. During the years after 1965, (except for 1967) plaintiff received a larger amount of dividend income than he had been receiving in the years prior to his "retirement."

The fact that the method of compensation of the principals of the business changed at the time of the "retirement" with little change in real economic terms is suggestive of an arrangement designed to disguise the economic realities of the situation in order to obtain maximum social security benefits for plaintiff.

■ It is well established that where the facts show that the corporate form has been used to mask "a scheme of shifting wages", the Secretary is not bound by the method of allocation used by the corporation and individual, and has the authority to treat sums paid by the corporation income earned for social security purposes. Dondero v. Celebrezze, *supra*; Newman v. Celebrezze, *supra*; Poss v. Ribicoff, *supra*; Davis v. Celebrezze, 217 F.Supp. 911 (D.Vt. 1963). Based on this fact, the hearing examiner ruled that the services rendered by plaintiff were worth sufficient amount to impose deductions against his social security benefits in each year after 1965.

With regard to whether plaintiff had earned in excess of the amount requiring imposition of deductions for each month ($100 in 1965; $125 in 1966 and 1967, $140 in 1968), section 203(f) (4)(B) of the Act provides that where an individual has yearly earnings in excess of the amount which may be earned before deductions are imposed

($1,200 for 1965, $1,500 for 1966 and 1967, $1,680 for 1968), it shall be presumed that he rendered services for wages in excess of the statutory amount in each month, "until it is shown to the satisfaction of the Secretary that such individual did not render such services in such month for more than such amount." In the instant case, apart from the months in 1965 and 1967 where plaintiff alleged, and the Secretary agreed, that he rendered no services, plaintiff did not claim a significant variation in the amount of services he performed in any month or that his services in any one month were so minimal as to be below the statutory amount in value. No evidence was produced with respect to the statutory presumption which therefore becomes conclusive. Accordingly, the Secretary was justified in finding that deductions were impossible for each month apart, from those when plaintiff was on vacation or jury duty.

 In relation to the recovery of the overpayment of benefits made to plaintiff, his wife and daughter, such recovery is mandated by the Act. Section 204(b) of the Act, 42 U.S.C.A. § 404(b), provides that an overpayment shall not be recovered if the overpaid individual is without fault *and* such recovery would defeat the purpose of title II or would be against "equity and good conscience". The Secretary determined that plaintiff possessed sufficient assets to repay the overpayment. He further determined that under the Administrative's Regulations, Social Security Administrative Regulations No. 4, §§ 404.507, 404.508, repayment would neither defeat the purposes of title II, nor be against equity and good conscience, thus making it unnecessary to consider whether plaintiff was without fault herein. Under these circumstances, the Administration is without authority to waive recovery of the overpayment.

In summary, the Secretary has determined, on the basis of a comprehensive review of the voluminous record herein (1) that plaintiff has continued to render substantial services to Ferreteria Europa, Inc. after his alleged retirement on January 1, 1965; (2) that he has earned more than the allowable amount in each month at issue, apart from May and June 1965 and August through November 1967; and (3) that recovery of the overpayment is proper herein.

It is clear that there is substantial evidence on record to affirm the ruling of the Secretary, and the action must be and it is hereby dismissed.