Rollie M. HOLDEN, Plaintiff-Appellant,

v.

Joseph A. CALIFANO, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 78–1446.

United States Court of Appeals, Sixth Circuit.

Oct. 21, 1980.

Decided Feb. 18, 1981.

Scott Daniel and D. C. Daniel, Jr., Murfreesboro, Tenn., for plaintiff-appellant.

Hal D. Hardin, U. S. Atty., Margaret M. Huff and Robert J. Washko, Nashville, Tenn., for defendant-appellee.

Before ENGEL, KEITH and MERRITT, Circuit Judges.

KEITH, Circuit Judge.

This case presents a claim for Social Security Retirement Benefits. On May 6, 1974, upon turning 65, claimant Rollie M. Holden applied for Retirement Insurance Benefits from the Social Security Administration. The SSA awarded benefits to the plaintiff beginning in May 1974. Two months later, however, the SSA rescinded its award of benefits. The SSA ruled that Mr. Holden was not eligible for benefits because he was rendering "substantial services" to a trade or business, contrary to 42 U.S.C. § 403(f). The SSA's determination was endorsed by an administrative law judge. The ALJ's decision was upheld by the district court, the Hon. L. Clure Morton. We affirm.

### FACTS

Rollie M. Holden owned and operated Holden Hardware as a sole proprietorship for approximately 25 years. His wife, Katherine Holden, also worked in the store 4 to 5 hours a day, occasionally waiting on customers. At night Mrs. Holden handled the store's bookkeeping.

Mr. Holden did not own the premises on which the hardware store was located. He rented the store from his mother-in-law. When Mr. Holden's mother-in-law died in 1968, title passed to Mrs. Holden.

On May 31, 1974, Mr. Holden sold his business to his wife. On June 1, 1974, Mrs. Holden received all assets and liabilities of the store in exchange for her unsecured note for $48,000. The note included Mrs. Holden's promise to pay $48,000, with no interest, at the rate of $500 per month. In addition, Mrs. Holden agreed to make a "gift" to her husband of $3,000 per year for four years.

Mr. Holden ordinarily worked 40 hours a week at his hardware store. After he sold the store to his wife, he reduced his hours to 20–25 hours a week. He received a "salary" of from $100 to $230 per month from June of 1974 to January of 1976.

After the sale of the business, Mrs. Holden increased her average work day at the store from 4–5 to 6–7 hours. Her salary was approximately $500 per month. She also received the profits of the business, but refused to tell the ALJ what they were.

After he sold the store to his wife, Mr. Holden testified that he continued to purchase the hardware goods on behalf of the store. He also stated that he waited on customers when the other employees were busy. However, Mr. Holden steadfastly maintained that his wife made all management decisions after he sold the store to her.

Throughout their marriage Mr. and Mrs. Holden had separate personal bank accounts. Before the sale of the business, both Mr. and Mrs. Holden were authorized to write checks on the Holden Hardware account. After the sale only Mrs. Holden could write checks on the business account. There is no question that Holden Hardware was properly sold to Mrs. Holden and that she is now the legal owner of the business.

The law which controls this case is not in dispute. A wage earner who is eligible for social security benefits may not work or engage in self-employment which results in income to him of over a certain amount per

year.[1] If the wage earner earns more than the set amount, he may not receive social security benefits.

The claimant in this case was paid a salary of from $100 to $230 per month for his work in the store from 1974 to 1976. This amount did not violate the earnings test.[2] The ALJ found, however, that Mr. Holden was ineligible for benefits because he was rendering "substantial services" to his wife's hardware store within the meaning of 42 U.S.C. § 403(f)(4)(A).[3]

The Secretary, by regulation, has defined the substantial services test as follows:

In general, the substantial services test is one of whether, in view of all the services rendered by the individual and the surrounding circumstances, the individual can reasonably be considered retired in the month in question. Even though an individual performs some services in a trade or business in a month, such services are not substantial where the evidence establishes to the satisfaction of the Administration that the individual may reasonably be considered retired in

that month. In determining whether an individual has or has not performed substantial services in any month, the following factors are considered:

(1) The amount of time the individual devoted to all trades and businesses;

(2) The nature of the services rendered by the individual;

(3) The extent and nature of the activity performed by the individual before he allegedly retired as compared with that performed thereafter;

(4) The presence or absence of an adequately paid manager, partner, or family member who manages the business;

(5) The type of business establishment involved;

(6) The amount of capital invested in the trade or business; and

(7) The seasonal nature of the trade or business.

20 C.F.R. § 404.446(a)

In a more elaborate regulation, 20 C.F.R. § 404.447, reprinted in the margin[4], the

---

**1.** The amount has varied over the years. See 42 U.S.C. § 403(f).

**2.** As the Holdens acknowledged before the ALJ, Mr. Holden's salary was increased to coincide with increases in the earnings standard set in the Social Security Act.

**3.** 42 U.S.C. § 403(f)(4)(A) provides:

(A) An individual will be presumed, with respect to any month, to have been engaged in self-employment in such month until it is shown to the satisfaction of the Secretary that such individual rendered no substantial services in such month with respect to any trade or business the net income or loss of which is includible in computing (as provided in paragraph (5) of this subsection) his net earnings or net loss from self-employment for any taxable year. The Secretary shall by regulations prescribe the methods and criteria for determining whether or not an individual has rendered substantial services with respect to any trade or business.

**4.** 20 C.F.R. 404.447 provides:

In determining whether an individual's services are substantial, consideration is given to the following factors:
(a) Amount of time devoted to trades or businesses. Consideration is first given to the amount of time the self-employed individual devotes to all trades or businesses, the

net income or loss of which is includible in computing his earnings as defined in § 404.-429. For the purposes of this paragraph, the time devoted to a trade or business includes all the time spent by the individual in any activity, whether physical or mental, at the place of business or elsewhere in furtherance of such trade or business. All time spent at the place of business which cannot reasonably be considered unrelated to business activities is considered time devoted to the trade or business. In considering the weight to be given to the time devoted to trades or businesses the following rules are applied:
(1) Forty-five hours or less in a month devoted to trade or business. Where the individual establishes that the time devoted to his trades and businesses during a calendar month was not more than 45 hours, the individual's services in that month are not considered substantial unless other factors (see paragraphs (b), (c), and (d) of this section), make such a finding unreasonable. For example, an individual who worked only 15 hours in a month might nevertheless be found to have rendered substantial services if he was managing a sizeable business or engaging in a highly skilled occupation. However, the services of less than 15 hours rendered in all trades and businesses during a calendar month are not substantial.

Secretary has established a presumption that a wage earner who devotes more than 45 hours a month to a trade or business is engaging in substantial employment. The ALJ relied on this presumption, together with an overall evaluation of Mr. Holden's post-retirement services to the hardware store, to reach the conclusion that Mr. Holden was indeed providing substantial services to the store and was not actually retired.

## I.

■ The petitioner first argues that 20 C.F.R. § 404.447(a)(2), regarding more than 45 hours a month devoted to a trade or business, is unconstitutionally vague and overbroad. We see nothing vague or overbroad in this regulation. The regulation could hardly be more specific. It established a 45 hour per month presumption of substantial services, and then outlines seven specific factors to be considered in determining whether services rendered are substantial. Petitioner characterizes 20 C.F.R. § 404.447(a)(2) as "doubletalk". We disagree. The regulation merely establishes a presumption that a person who works more than 45 hours per month is rendering substantial services. See *Gordon v. Finch*, 437 F.2d 253, 255 (8th Cir. 1971).

■ Petitioners claim that the regulation is overbroad is really a claim that the regulation is not justified by the statute. We disagree. An agency has broad authority to promulgate regulations. *See e. g. Marshall v. Whirlpool*, 593 F.2d 715 (6th Cir. 1979), aff'd, 445 U.S. 1, 7, 100 S.Ct. 883, 888, 63 L.Ed.2d 154 (1980). Regulations are entitled to deference. *Id.* The regulations in question here are specifically authorized by statute, 42 U.S.C. § 403(f)(4)(A) and, we think, are a reasonable interpretation of the statute.

## II.

■ Petitioner next argues that the hearing before the ALJ was unfairly conducted. Petitioner was not represented by counsel at the hearing. While the absence of counsel might cause us to scrutinize the record with care, it alone is not a grounds for reversal or remand. *See Sykes v. Finch*, 443 F.2d 192, 194 (7th Cir. 1971).

(2) More than 45 hours in a month devoted to trades and businesses. Where an individual devotes more than 45 hours to all trades and businesses during a calendar month, it will be found that the individual's services are substantial unless it is established that the individual could reasonably be considered retired in the month and, therefore, that such services were not, in fact, substantial.

(b) Nature of services rendered. Consideration is also given to the nature of the services rendered by the individual in any case where a finding that the individual was retired would be unreasonable if based on time alone (see paragraph (a) of this section). The more highly skilled and valuable his services in self-employment are, the more likely the individual rendering such services could not reasonably be considered retired. The performance of services regularly also tends to show that the individual has not retired. Services are considered in relation to the technical and management needs of the business in which they are rendered. Thus, skilled services of a managerial or technical nature may be so important to the conduct of a sizable business that such services would be substantial even though the time required to render the services is considerably less than 45 hours.

(c) Comparison of services rendered before and after retirement. Where consideration of the amount of time devoted to a trade or business (see paragraph (a) of this section) and the nature of the services rendered (see paragraph (b) of this section) is not sufficient to establish whether an individual's services were substantial, consideration is given to the extent and nature of the services rendered by the individual before his "retirement" as compared with the services performed during the period in question. A significant reduction in the amount of importance of services rendered in the business tends to show that the individual is retired; absence of such reduction tends to show that the individual is not retired.

(d) Setting in which services performed. Where consideration of the factors described in paragraphs (a), (b), and (c) of this section is not sufficient to establish that an individual's services in self-employment were or were not substantial, all other factors are considered. The presence or absence of a capable manager, the kind and size of business, the amount of capital invested and whether the business is seasonal, as well as any other pertinent factors are considered in determining whether the individual's services are such that he can reasonably be considered retired.

We have carefully examined the record. The petitioner and his wife are not uneducated or ignorant. Nor are they timid. The record reveals that they have been loudly demanding the benefits to which they think they are entitled throughout the administrative proceedings. In response to petitioner's demands, the SSA sent him a notice of the issues involved in this case, together with copies of the relevant statutes and regulations. At the hearing it was clear that petitioner and his wife understood the basic issue involved: whether he had effectively transferred his business to his wife, and was no longer performing substantial services in the business.

It is true that at some points in the hearing petitioner or his wife appeared to be under the misapprehension that a legal transfer of the business for tax and ownership purposes was also sufficient for social security purposes. However, this did not affect the petitioner's complete presentation of his case, including a recitation of his and his wife's duties and activities before and after the sale of the business. Our examination of the transcript reveals a fairly conducted hearing in which the ALJ displayed careful concern and even-handedness.

We find no merit in petitioner's contention that the ALJ should have, *sua sponte*, subpoenaed witnesses who could testify about whether Mr. Holden participated in the hiring of an employee after his alleged retirement. *See* 20 C.F.R. § 404.926. In light of Mr. Holden's testimony that he participated in the decision to hire the employee, we fail to see the need for additional witnesses. Petitioner's contention that the hearing was unfair is without merit.

---

**5.** In making this statement, we are being generous to the petitioner. The petitioner's assertion that he worked between 20–25 hours per week at the store is contained in a statement that he filed with the Social Security Administration on June 27, 1974. At the hearing before the ALJ the petitioner was evasive in answering the ALJ's questions as to how much time he (the petitioner) spent at the store. A reasonable inference which could be made from the evasive testimony is that the petitioner spent more time than that:

## III.

The key issue on appeal is whether substantial evidence supports the ALJ's determination that the petitioner was still providing substantial services to Holden Hardware. The petitioner argues that he was indeed retired and not providing substantial services to the business. The petitioner also argues that the ALJ's decision was based on unconstitutional sex-based criteria in that the ALJ assumed that the petitioner's wife, because of her sex, could not truly be in charge of the business.

### A.

As indicated above, there is no doubt that Holden Hardware was legally transferred to the petitioner's wife. However, the Secretary has the right to examine the substance of the transfer for purposes of the Social Security Act. *Gordon v. Finch*, 437 F.2d 253 (8th Cir. 1971); *Skalit v. Finch*, 431 F.2d 452 (6th Cir. 1970). The fact that the Internal Revenue Service has no problem with the sale does not affect the Secretary's right to reject it for social security purposes.

Our role as a reviewing court is not to retry the case *de novo*. Rather, we must uphold the Secretary's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). Our examination of this record convinces us that there exists substantial evidence to support the Secretary's decision.

First, petitioner's own testimony reveals that although he cut back his workload at the store, he still worked from 80 to 100 hrs. per month at Holden Hardware after the transfer took place.[5] Under 20 C.F.R. § 404.447(a)(2), this creates a presumption that he is delivering "substantial services".

Q. How much time were you spending the store, total time in a week's time, let's say in January of 1974?
A. In a week's time?
Q. Well, give me an average of about how much time you were spending there or devoting there to the business, whether it was right there in the building or buying trip or anywhere else?
A. Oh. I'd estimate around average of 40 hours a week or something like that.
Q. Has that changed now?

Second, there is substantial evidence in the record to support the Secretary's decision that the petitioner continued to perform valuable managerial services on a regular basis. 20 C.F.R. § 404.447(b). Mr. Holden regularly placed orders for half of the stock in the hardware store. He participated in discussions on whether to hire a new employee. As the district court noted, by continuing to work in the store for 20–25 hours per week, Mr. Holden was available to maintain the 25 years of goodwill he had built up in the store. This, plus his extensive experience and knowledge, made his presence at the store significant.

Finally, we note that Mr. Holden sold the store to his wife on unusually generous terms—an unsecured note payable at no interest with monthly installments of $500. In addition, the plaintiff was not listed as a salaried employee on a Tennessee Department of Employment Security Employers Quarterly Contribution Report dated July 12, 1974, or an Employer's Quarterly Federal Tax Return dated June 30, 1974.

A proper paper transaction may indeed have taken place. Mr. Holden's role at Holden Hardware may indeed have diminished after the sale of the store.[6] However, we find that substantial evidence supports

> A. Yes, I don't do down as often, I take more time off at lunch. I'm away more on weekends.
> Q. About how much time do you average you're at the store now?
> A. I never have figured it out since I don't work by the hour.
> Q. Well, you were able to give me an average before the sale, you suggested 40 hours a week before the sale, can you give me an estimate?
> A. Well, it's some, it would probably be some under there, but I really don't know because as I said I never, I never, I don't keep time on it.
> Q. Has anything changed, as far as the time that you are spending there?
> A. I don't have the responsibility that's been buying and selling. I have other people that do that as well as my wife taking over for, she can do it, she's been down there ever since I have and she's acquired that knowledge, so it's not necessary, I don't do it, it's not my job to do it any more, I don't own the store, so other people have taken over what I was previously doing, to a great extent.

the Secretary's decision that Mr. Holden was rendering substantial services to Holden Hardware after the sale, and thus was not entitled to benefits.

### B.

Petitioner also claims that the ALJ's decision was based on impermissible sex-based factors, namely the assumption that because of her sex the plaintiff's wife cannot be in charge of the business when her husband is present.

We see nothing in the ALJ's decision or his questions at the hearing to support this argument. The ALJ based his decision on the factors we have outlined above: the amount of time Mr. Holden devoted to the business, and the nature of the services he rendered. There is nothing sex-based in these criteria.

The only possible sex bias that could exist might lie in the provision in 20 C.F.R. § 404.446(a)(4) which permits the ALJ to take into account the presence of a "family member" who manages the business. There is nothing in the ALJ's decision indicating that he relied on this provision. On the contrary, the ALJ specifically stated that a transfer could take place to a family member, but that the SSA could still delve into the "substantial services" question:

> Q. Well, prior to June 1, of '74, you, as you say, did all the things that a self-employed, sole proprietor would do in operating a small business?
> A. Did and saw it was done.
> Q. And now you don't do any of those things that you did before?
> A. No, I didn't say I didn't do any of them, because I'm still down there, I still wait on some people, I still do some work around the store, but I'm not the key figure any more.

6. The ALJ found that "there was . . . very little, if any difference in the claimant's participation and activities in connection with the store prior to the time he allegedly transferred the business and after the time such transfer allegedly took place." In light of Mr. Holden's evasive testimony, *see* n.5, substantial evidence supports this determination. However, even if the ALJ overstated Mr. Holden's post-sale role at Holden Hardware, there is certainly substantial evidence that Mr. Holden's role was "substantial" within the meaning of the Social Security Act.

In essence the question is one of whether, in view of all services rendered by the individual and the surrounding circumstances, he can reasonably be considered retired. Clearly an individual may legitimately try to conduct his business affairs in such a manner as to improve his social security benefits, but it is necessary to look beyond the form and determine whether, in fact, the claimant has retired. An individual has a right to discontinue his self-employment at any time by transferring his business to other members of his family, and the fact that he does so to qualify for retirement benefits makes the transfer no less valid. However, this claimant must show that there has been an attempted transfer de jure as well as de facto. The Social Security Administration may impose a deduction against benefits if an individual continues to provide substantial services in a business which he has attempted to transfer to a member of his family. (App. at 15).

Even if the ALJ had relied upon the family member factor, he would not have committed error. The ALJ has the authority and the duty to consider all of the facts and circumstances surrounding a transfer of assets and subsequent work performed by the wage-earner. 20 C.F.R. § 404.447. The fact that a transfer of assets is made to a member of the household and that household income thus does not change is certainly a relevant factor. Since a member of one's family could be male or female, there is nothing sex-based about considering this. *See Skalet v. Finch, supra.* (transfer of business to wife and son); *Perez v. Secretary of HEW*, 353 F.Supp. 1282 (D.P.R. 1972) (transfer of title of vice-president and treasurer from wage earner to his nephew).

No one questions Mrs. Holden's knowledge and ability to run Holden Hardware by herself. That is not the issue, however. The issue is whether Mr. Holden continues to provide substantial services to the store. For the reasons outlined above, we think that substantial evidence supports the ALJ's determination that Mr. Holden does provide substantial services to Holden Hardware.

### IV.

The ALJ lastly ruled that the Social Security Administration should recover $853.70 from the petitioner. This was the amount which the SSA paid to the petitioner for two months before determining that he was not entitled to benefits because he was rendering substantial services to Holden Hardware.

Pursuant to 42 U.S.C. § 404(b) [7], the ALJ found that the plaintiff was without fault for the over-payment made to him. However, the ALJ concluded that it would not be contrary to equity and good conscience for the petitioner to repay the money. The petitioner does not claim financial hardship. We see no abuse of discretion in the ALJ's decision. *See Sierakowski v. Weinberger*, 504 F.2d 831, 836 (6th Cir. 1974).

The judgment of the district court is affirmed.

---

7. 42 U.S.C. § 404(b) provides:

In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this sub-chapter or would be against equity and good conscience.