Jack D. LASHLEY, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 82–5163.

United States Court of Appeals, Sixth Circuit.

Argued March 29, 1983.

Decided June 1, 1983.

Rehearing Denied July 25, 1983.

D.C. Daniel, Jr. (argued), Murfreesboro, Tenn., for plaintiff-appellant.

Joe B. Brown, U.S. Atty., Margaret M. Huff, Asst. U.S. Atty. [lead counsel], John Williams, Asst. U.S. Atty. (argued), Nashville, Tenn., for defendant-appellee.

Before KEITH and MARTIN, Circuit Judges, and PORTER.*

KEITH, Circuit Judge.

On February 9, 1977, plaintiff-appellant, Jack D. Lashley, filed an application for disability benefits. 42 U.S.C. § 401 *et seq.* The application was denied initially and upon reconsideration. On March 22, 1978, an administrative law judge determined that Lashley had been disabled for the closed period from August 24, 1976 through September 13, 1977. This decision became the final decision of the Secretary. Lashley did not appeal.

Subsequently, on December 8, 1978, Lashley filed the present application for disability benefits. This second application also

---

* Senior Judge David S. Porter, United States District Court for the Southern District of Ohio, sitting by designation.

was denied initially and upon reconsideration. On December 9, 1980 a brief hearing was held before an administrative law judge. Lashley appeared and testified without the assistance of an attorney. All questioning was done by the administrative law judge (ALJ). The entire proceeding lasted only 25 minutes, and was transcribed on approximately 11 pages.

At the hearing Lashley testified that he was born on September 25, 1921, and has a fifth-grade education. He worked as a farmer from 1945–1956. From 1956–1960 he worked as a policeman, a fireman, and a deputy sheriff in Davidson County, Tennessee. He worked as a bus driver for the Metro Transit Authority in Nashville from 1960 to 1976. While working as a bus driver in 1976 he suffered his first stroke. His second stroke occurred in 1977.

Lashley maintained that the residuals from his strokes severely limited his activities. The following responses to several questions describe the continuing effect of the strokes: "I can't use my right hand and I can't—my right leg I can't use it like I could. I can grip something like this chair or something like that for a second, it's all right. Then I just gradually lose my grip. My speech is not like it was. I know what I'm trying to say and I can't say it sometimes. Can't operate like I could as far as my speech is concerned." Allegedly, his mental health and nervous system had also been adversely affected: "Well, I can't read and I can't—half the time I can't think. I get nervous. That's about all I know of that I could add". He further complained that working around noisy vibrating equipment caused intolerable head pain.

The ALJ considered the following medical evidence. In May of 1977 Dr. David Strayhorn examined Lashley. He found that plaintiff had a mild speech impediment, was slightly weak in the right hand, and was noticeably unsteady when standing on one foot. Dr. Strayhorn stated: "His symptoms at the present time in addition to his speech trouble consist of generalized weakness and some difficulty with his memory." Dr. Strayhorn opined that plaintiff could have a neoplasm or mass occupying lesion in his brain. He ultimately concluded that Lashley was unable to engage in sedentary work. That same month, Dr. Fuqua stated that Lashley had been totally disabled since his first stroke, and that he would never be able to work again.

Dr. Arthur Cushman and Dr. Thomas B. Miller, Lashley's treating physicians, also maintained that he was totally disabled. Dr. Miller, an internist, issued a report dated February 13, 1979, which indicated that Lashley was totally disabled unless he could be vocationally rehabilitated. Dr. Miller found that the strokes had adversely affected the right side of Lashley's body. In particular, his right leg was weak. It caused him to limp, and occasionally experience numbness. Periodically the leg collapsed beneath him. Lashley's right arm was similarly affected. It was clumsy and very unreliable.

Dr. Cushman, a neurosurgeon, noted many of the same physical limitations that Dr. Miller had observed. In 1977 he found that Lashley could speak "alright", but he experienced periodic weakness on his right side. He characterized Lashley's condition as stable, and concluded that he was totally and permanently disabled. In a letter dated September 5, 1978, Dr. Cushman indicated that he had seen Lashley on "numerous occasions" and "believed that he [was] totally disabled." He summarized his findings as follows: "The patient has an expressive aphasia which alternates quite a bit. This patient's symptoms have fluctuated quit a bit with severe cerebral vascular disease and difficulty talking. I do not believe that there is any type of work that he can do. He has had a bad stroke in the past, but has recovered well from that."

On October 31, 1979, Dr. Clark, a neurologist, examined Lashley at the request of the Secretary. He found no objective evidence of impairment. Muscle tone was good and there were no sensory abnormalities. Dr. Clark questioned whether Lashley's limp was an organic finding. He also noted that casual use of the right hand was almost normal. Dr. Clark, however, did have res-

ervations about Lashley's mental condition. He stated: "His mental status was difficult to figure out. He seemed quite vague a lot of the time, and he told me the day was Saturday when it was actually Wednesday. The date was July 31, and then he said he couldn't tell me what year it was, later saying 'seventy something, ain't it?' When asked about Presidents he said Johnson was President, and Kennedy preceded him, and that he couldn't think of who preceded Kennedy. When asked to do the 100 minus 7 test he said, 'I don't know, 90 something'." In fact, Dr. Clark recommended that plaintiff undergo psychological testing. Nevertheless, he suggested that plaintiff was able to perform moderate work activities on a sustained basis.

On February 26, 1980, Lashley was given a psychological evaluation by Mr. Pettigrew, a licensed psychological examiner. This examination was performed at the request of the Secretary. Lashley's single appearance before Mr. Pettigrew suggested that his grooming habits had not deteriorated. Plaintiff reported that his activities included associating regularly with his friends, watching television, and assisting his wife. His speech was spontaneous, coherent and relevant. Mr. Pettigrew found no evidence of hallucinations, delusions, or other symptoms associated with psychotic level disorganization. He concluded that Lashley had the mental ability to perform competitive unskilled work.

Dr. Meirowsky, a neurosurgeon, also examined Lashley at the request of the Secretary. He found plaintiff to be slow, but reasonably accurate in his responses. He noted some hesitancy in his speech, but did not find any manifestations of an expressive or receptive dysphasia. He reported that there was no muscle atrophy or residual motor weakness in the upper and lower extremities. He also found the claimant's cranial nerves to be intact. An examination of the cartoid arteries revealed equal pulses without bruits or thrills. Dr. Meirowsky concluded that Lashley did not suffer from a neurological deficit. He did, however, state that plaintiff's mental status required further study and evaluation.

## I.

Lashley contends that the hearing before the ALJ was so superficial as to deny him due process. Allegedly, the ALJ failed to adequately develop the record. We agree that Lashley was denied a full and fair hearing.

In *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Supreme Court explained that the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge. The court cautioned, however, that the administrative law judge must not become a partisan and assume the role of counsel: "The social security hearing examiner furthermore does not act as counsel. He acts as an examiner charged with developing the facts." *Id.* at 411, 91 S.Ct. at 1432.

■ Subsequent appellate court development of the *Perales* doctrine has emphasized the remedial purpose of the authorizing legislation and the duty of the administrative law judge to fully develop the record. These two factors impose a special duty on the administrative law judge where the claimant appears without counsel. In *Smith v. Harris,* 644 F.2d 985 (3d Cir.1981), Judge A. Leon Higginbotham, speaking for the Third Circuit, held that "where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role" in the proceedings. *Id.* at 989. In *McConnell v. Schweiker,* 655 F.2d 604 (5th Cir. 1981) the Fifth Circuit adopted a similar standard. There the court held that "an administrative law judge's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appeals before him." *Id.* at 606, *quoting Clark v. Schweiker,* 652 F.2d 399, 404 (5th Cir.1981). *See also Driggins v. Harris,* 657 F.2d 187 (8th Cir.1981); *Thompson v. Schweiker,* 665 F.2d 936, 941 (9th Cir.1982); *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir.1978); *Diabo v. Secretary of Health,*

*Education & Welfare,* 627 F.2d 278, 282 (D.C.Cir.1980). To satisfy this special duty the administrative law judge must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir. 1972) *quoted in Cox,* 587 F.2d at 991. He must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.*

There is no bright line test for determining when the administrative law judge has assumed the role of counsel or failed to fully develop the record. The determination in each case must be made on a case by case basis. On appeal this Court has indicated that it will "scrutinize the record with care" where the claimant appeared before the administrative law judge without counsel. *See Holden v. Califano,* 641 F.2d 405, 408 (6th Cir.1981). This special scrutiny, however, does not always result in reversal. *Id.* It is clear that a claimant may waive his statutory right to counsel. 20 C.F.R. § 404.971. *See McConnell,* 655 F.2d at 606.

In the present case the ALJ's failure to fulfill his duty to develop *fully* the record denied Lashley a full and fair hearing. We do not criticize the conduct of the hearing on the ground that the ALJ intended to produce an unfair result. Indeed, we recognize the ALJ is under a duty to dispose promptly of claims and avoid unnecessary delays. Nevertheless, the administrative law judge did not fulfill his responsibility in this case. The hearing was brief. It lasted a mere 25 minutes, and was fully transcribed in approximately 11 pages. In addition Lashley possessed limited intelligence, was inarticulate, and appeared to be easily confused. He is a far cry from the articulate claimants who appeared in *Holden v. Califano,* 641 F.2d 405 (6th Cir.1981). This Court described the *Holden* claimants as follows: "The petitioner and his wife are not uneducated or ignorant. Nor are they timid. The record reveals that they have been loudly demanding the benefits to which they think they are entitled throughout the administrative proceedings." *Id.* at

409. This difference in the articulateness of the claimant imposed a special duty on the ALJ to be especially probing in his questioning. This duty was not satisfied. Lashley was only superficially questioned concerning his daily activities and his physical limitations.

Superficial questioning of inarticulate claimants or claimants with limited education is likely to elicit responses which fail to portray accurately the extent of their limitations. Lashley, for example, responded to the examiners' questions as follows:

Q. What do you do in the yard?

A. I try to mow the yard.

Q. Do you use a riding mower or push mower?

A. I tried to ride a riding mower but it hurts my head worser than the push mower.

Q. You usually use a push mower?

A. Yes, sir.

The inferences the ALJ drew from this testimony is that plaintiff is a vigorous man who prefers a push mower to a power mower. This inference, however, appears to be unfounded. More probing questioning concerning how often the activity is attempted, how long he is capable of sustaining the activity, and what adverse consequences he suffers as a result of the activity would undoubtedly have provided more probative information concerning his physical limitations.

Most importantly, the ALJ's examination concerning plaintiff's last place of employment is particularly lacking. Lashley was queried as follows concerning his duties at Tennessee-Kentucky Sprinkler Company:

Q. What did you do?

A. I put stuff that you put the fittings on pipes in the different places.

Q. In the file it's described as stockroom clerk.

A. Yes, sir.

Q. So tell me a little bit better what you did.

A. Different fittings—$^{9}/_{16}$th, $^{2}/_{8}$th and all—I put them in different bins, and that's about it.

Q. In other words you sorted these parts?

A. Yes, sir.

The ALJ, however, did not obtain an explanation why plaintiff was forced to leave the job after only 3 days. This information would have greatly enhanced any determination concerning the claimant's ability to perform work. In sum, the superficial quality of the questioning deprived Lashley of a full and fair hearing.

## II.

The Secretary contends that there is ample evidence to support its finding of "no severe impairment". We disagree. The record does not support the decision of the Secretary, even though Lashley did not receive a full and fair hearing. In fact, the record contains compelling evidence that Lashley suffers from a permanent, total disability.

■ On appeal our standard of review is whether there is substantial evidence on the record as a whole to support the decision of the Secretary. 42 U.S.C. § 405; *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978). Substantial evidence means more than a mere scintilla of evidence. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir.1981).

In *Kirk* the four steps for evaluating disability claims were set forth. First, "an initial determination [must] be made as to whether the claimant is currently engaged in substantial gainful activity; if so the claimant is found 'not disabled'. Second, it is determined if the claimant has a severe impairment—one that significantly limits the ability to perform work-related functions; if not, then on the medical evidence alone the claimant is determined to be not

disabled. Third, if a severe impairment is found, the impairment is compared against those listed in Appendix I (1981), to see if, on the medical evidence alone, the claimant can be found to be disabled. Assuming the claimant is not found to be disabled, the fourth step requires inquiry into whether the claimant can perform relevant past work; if so, then the claimant is not disabled." *Kirk,* 667 F.2d at 528. During the fourth step, the burden is upon the claimant to show that his disability prevents him from performing any substantial gainful employment for the statutory period. *Id.* at 529. Once, however, the claimant makes a *prima facie* case by showing that he cannot perform his usual work, the burden shifts to the Secretary to show that there is work in the national economy which he can perform. *Id.* at 529; *Hephner,* 574 F.2d at 361–62.

In the present case the ALJ concluded that Lashley does not suffer from a severe impairment. The Secretary only half-heartedly argued this point for good reason. We hold that the ALJ was in error. The reports of Drs. Cushman, Miller, Fuqua and Strayhorn constitute conclusive evidence that Lashley's ability to perform work related functions was severely limited.

■ The Secretary's chief argument on appeal is that Lashley did not make a *prima facie* case of disability. Allegedly, Lashley retained the capacity to perform the stock clerk job. Again, we must disagree. The stock clerk's job with the Tennessee-Kentucky Automatic Sprinkler Company was not relevant past employment for two reasons.[1] First, plaintiff only attempted to perform the position for three days before quitting. The brevity of Lashley's tenure indicates that it is not relevant past work within the meaning of 20 C.F.R. § 404.1508. That regulation states: "An individual who has no prior work experience or has worked only sporadically *or for brief periods of time* during the 15-year period may be considered to have no relevant work experi-

---

1. The Secretary was correct in arguing the stock clerk job was not "trial work" within the meaning of 20 C.F.R. § 404.1592.

ence". (emphasis added) Second, the evidence in the record concerning the stock clerk's job is too sketchy to be the basis of such a determination.

To make out a *prima facie* case, all plaintiff was required to do was to demonstrate that he could no longer perform his past employment as a bus driver. This Lashley did. Four different physicians, Drs. Cushman, Miller, Fuqua and Strayhorn, conducted independent examinations and concluded that Lashley was totally and permanently disabled. Moreover, Drs. Cushman and Miller are treating physicians who have seen Lashley on several occasions. It is well settled that the opinions of treating physicians should be given greater weight than those held by physicians the Secretary hired and who only examined plaintiff once. *See Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980); *Kirk,* 667 F.2d at 536; *Stamper v. Harris,* 650 F.2d 108, 111 (6th Cir.1981). This reliance on the treating physicians is particularly appropriate here because the severity of plaintiff's condition fluctuates. Only physicians who have seen plaintiff several times over a period of months can adequately evaluate his impairment. Thus, even though Drs. Clark and Meirowsky may have honestly reported claimant's physical limitations, their conclusions are an inaccurate portrayal of plaintiff's true condition. The ALJ's reliance on their reports, therefore, is misplaced. A single visit is simply too short a time to evaluate properly the full scope of plaintiff's impairment.

The ALJ also erred in failing to give proper consideration to the lay testimony in the record. Perceptible weight must be given to lay testimony where, as here, it is fully supported by the reports of the treating physicians. *See Allen,* 613 F.2d at 145; *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383 (6th Cir.1978); *Stamper,* 650 F.2d at 111. Here, Mrs. Lashley testified as follows: "I have to shave him, he can't hold the razor with his right hand ... he's very nervous. He tries to do the work, but he just can't do it. He gets nervous and up-

set." She also noted that her husband had headaches constantly and frequently experienced leg cramps. Yet, it appears that the ALJ did not give appropriate consideration to this testimony. This was error.

The Secretary's conclusion that Lashley did not suffer from a mental impairment is also not supported by substantial evidence. The ALJ's reliance on the opinion of Mr. Pettigrew is misplaced. Drs. Strayhorn, Clark, and Meirowsky all noted that Lashley had mental problems. The independence and timing of these observations, both before and after the Pettigrew examination, detract from Mr. Pettigrew's conclusion that Lashley was mentally capable of working in a competitive work environment. In fact, Dr. Clark and Dr. Meirowsky's statements only confirm Lashley's testimony. He explicitly stated that "half the time I can't think". The failure of the ALJ to give proper weight to this testimony is particularly disturbing when it is corroborated by the reports of physicians the Secretary has selected. *See Id.; Simonson v. Schweiker,* 699 F.2d 426, 428–29 (8th Cir. 1983).

In sum, the combined evidence of mental *and* physical impairment is sufficient not only to shift the burden to the Secretary, but to demonstrate total and permanent disability. Accordingly, the decision of the Secretary is not supported by substantial evidence. Upon consideration of the briefs, arguments of counsel, and the record in this action, we reverse the judgment entered by the district court. This action is remanded to the district court with directions to instruct the Secretary to award benefits.