774 F.2d 1163
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jacob Rietsema, Plaintiff-Appellant,
v.
Secretary of Health and Human Services, Defendant-Appellee.
 No. 84-1684
 United States Court of Appeals, Sixth Circuit.
 9/11/85
 
 W.D.Mich.
 REVERSED AND REMANDED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
 BEFORE: MARTIN, JONES and WELLFORD, Circuit Judges.
 Per Curiam.
 
 
 1
 Claimant appeals the summary judgment in favor of the Secretary of Health and Human Services in this social security disability case. Claimant argues in part that he is suffering from a severe mental impairment that renders him disabled. We agree and REVERSE and REMAND for an award of benefits.
 
 
 2
 Throughout his life Jacob Rietsema has experienced frequent episodes of neurotic depression that became more severe in the late 1970's. As early as 1962, he was treated for this condition at Pine Rest Hospital on an out-patient basis and he returned there in 1967-1968 for further treatment. In 1968 he was hospitalized at Kent Oaks Hospital, a psychiatric facility, with a diagnosis of Schizophrenic Reaction, Paranoid-type. In 1975 he appeared again for treatment of depression at the South Kent Mental Health Center. He returned to the Pine Rest Out-Patient Clinic in 1977 following his divorce 'complaining primarily of his depression and his inability to function in a meaningful way.' It was noted that plaintiff's business was declining and that he 'would like emotional help so that he can improve his work capacity.' In January, 1980, he was advised to readmit himself to Kent Oaks Hospital for treatment and he ultimately did so. Following thishospitalization, he was returned for care to the Community Mental Health System where he 'continued to have chronic problems with social and vocational dysfunction and chronic depression. He continues to take the prescription medications Ludiomil and Asendin for depression and anxiety.
 
 
 3
 Following his divorce, Mr. Rietsema's mental state began to deteriorate. In an office note dated July 12, 1976, Dr. Pilling, his long-time treating physician, wrote that 'Each A.M. he is totally fatigued and must take a Dexamyl to get going. He begins to get going about noon. He is extremely indecisive, has trouble completing jobs, and has a very short attention span.' Although his business went into a decline, claimant was able to keep it going until two years later when he had a falling out with his son. At that point claimant became severely depressed and gave up his business entirely. He later sat by and did nothing when his business was sold to pay back taxes.
 
 
 4
 Claimant testified he did no housework, that he fed himself food out of cans, and washed his laundry in a pail. He would walk to a restaurant to have a doughnut and coffee. His sleep was irregular. Sometimes he did not sleep for days; although at other times he would sleep for 24 hours at a time.
 
 
 5
 He would go to a bowling alley at night and help clean up for a cup of coffee. He would go to church but he had trouble hearing and understanding the service. He did not socialize or go to movies or sporting events. He did a little gardening and cut his grass only after the city told him it was too long. He indicated that during the time between going to the restaurant in the morning and the bowling alley at night, which he did to get warm, he just stayed in bed.
 
 
 6
 He told the ALJ his depression was the same at the time of the hearing as it had been in 1979. He felt like crying all the time. It seemed impossible for him to go on. He 'prayed the Lord would take him.'
 
 I.
 
 7
 Review of the Secretary's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the Secretary's decision. 'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..' 42 U.S.C. Sec. 405(g) (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In determining whether the evidence is substantial we must "take into acount whatever in the record fairly detracts from its weight." Beavers v. Secretary of H.E.W., 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).
 
 
 8
 We find that there is not substantial evidence to support the Secretary's finding that claimant is not disabled. Under the sequential analysis of the regulations, the Secretary should have found claimant disabled. See 20 CFR Sec. 404.1520. First, claimant is not currently engaged in substantial gainful activity. Second, despite the ALJ's conclusion to the contrary, claimant's impairment is severe--i.e., his impairment significantly limits his ability to perform work-related functions. 20 CFR Sec. 404.1520(c) requires that a claimant's impairment be severe and sets forth a minimal standard: the impairment must 'significantly limit[ ] . . . ability to do basic work activities.' He need not be substantially or totally limited by that impairment. Section 404.1521(b) merely sets forth examples of work activities and is not intended to be an all-inclusive list of work activities. Therefore, the ALJ's conclusion that the claimant can follow directions and 'respond appropriately' to co-workers and the work setting (Sec. 404.1521) is not conclusive on the issue of 'severity.'
 
 
 9
 There is no evidence in the record to show that claimant has the 'abilities and aptitudes necessary to do most jobs.' 20 CFR Sec. 404.1521(b). Claimant is suffering from a depression that is totally debilitating. He is unable to care for his own personal needs except for those necessary for mere survival. Claimant was so paralyzed by his depression that he sat by and did nothing when his business was sold to pay back taxes. Dr. Pilling found that claimant is indecisive, has trouble completing jobs, and has a short attention span. Clearly, the conclusion that claimant can perform basic work activities is not supported by substantial evidence.
 
 
 10
 The next step is to consider whether that impairment meets the listing of impairments in Pt. 404, Subpt. P. App. 1. The impairment is a neurotic disorder. Under Sec. 12.04 of the Listing, a neurotic disorder meets the listing if claimant manifests one or more of the following clinical signs:
 
 
 11
 1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g., duodenal ulcer); or
 
 
 12
 2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or
 
 
 13
 3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or
 
 
 14
 4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or
 
 
 15
 5. Persistent compulsive, ritualistic behavior; or
 
 
 16
 6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or
 
 
 17
 7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either;
 
 
 18
 a. Seclusiveness or autistic thinking; or
 
 
 19
 b. Pathologically inappropriate suspiciousness or hostility;
 
 
 20
 Claimant suffers from recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory. Claimant also meets the additional requirement that claimant must experience 'resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.' Sec. 12.04. Consequently, claimant has an impairment that meets the listing of impairments and, thus, is disabled within the meaning of the Act and is entitled to benefits. Kirk v. Secretary, 667 F.2d 524, 528 (6th Cir. 1981).
 
 II.
 
 21
 Claimant also alleges that he was deprived of his right to a full and fair hearing because he was not represented by counsel. The ALJ asked claimant if he understood that he had a right to counsel. Claimant merely replied that he was aware of that by reading the claims notice but that he had not had the energy to find one. Claimant contends that this did not amount to a voluntary waiver and that the ALJ should have realized that claimant was unable to represent himself. We agree.
 
 
 22
 The lack of counsel does not in itself require reversal. Holden v. Califano, 641 F.2d 405, 408 (6th Cir. 1981). A claimant may waive his opportunity to be represented by counsel. Such a waiver must, however, be clearly shown on the record. Especially where the claimant may be suffering from mental illness, the ALJ should explain the role of an attorney. Smith v. Secretary, 587 F.2d 857, 860-61 7th Cir. 1978). The instant record shows that claimant did not clearly waive his opportunity to be represented by counsel. In light of claimant's mental impairment and the type of testimony needed, we hold that the ALJ erred in failing to explain the role of the attorney to plaintiff or how an attorney might have been helpful to plaintiff given his particular mental impairment.
 
 
 23
 Accordingly, the case is REVERSED and REMANDED for an award of benefits.
 
 WELLFORD, Circuit Judge, dissenting:
 
 24
 I am in agreement with Part II of the majority's opinion except for the award of benefit. Claimant Rietsema is, without doubt, a mentally and emotionally troubled individual with a history of recurring physical ailments. Especially in light of Rietsema's mental problems as well as limited educational background, the ALJ should have been more alert to his need for an attorney at the hearing and more careful in advising him about the right to counsel. It seems clear that a competent attorney could have easily developed better evidentiary support in the record for Rietsema's claim of disability. I therefore favor remanding the case for the purpose of holding a new disability hearing wherein Rietsema would have the benefit of appointed counsel.
 
 
 25
 I cannot agree, however, with the majority's ruling in Part I that the evidence as developed in this record is not sufficient to support the ALJ's finding of no disability. The evidence favoring disability in the record, as the ALJ found, is meager and the evidence against disability is substantial in my view.
 
 
 26
 In making its conclusion in favor of disability, the majority opinion cites only one piece of medical evidence--a brief passage from the office notice of Dr. Warren C. Pilling on July 12, 1976, regarding Rietsema's condition. That opinion neglects to point out that Rietsema does not even claim the onset of disability until April 1979. Regarding the intervening three years, Rietsema readily acknowledges that he continued to work with his youngest son in his business involving the making and installation of iron railings. Dr. Pilling did not see Rietsema after July 1976 and nowhere stated that he was totally disabled.
 
 
 27
 At the hearing Rietsema told the ALJ about his recurring lower back pain but emphasized that the mental 'depression' was the 'most' prominent cause of his disability. This relative lack of severity in Rietsema's physical condition is demonstrated in the 1981 examination reports of Dr. James Henderson and Dr. Allen Fishman. Moreover, in December 1979--nine months after he stopped work--Dr. William E. Van Eerden, the staff psychiatrist of the Pine Rest Christian Hospital in Grand Rapids, Michigan, 'strongly encouraged him [Rietsema] to work [emphasis added]' as an antidote to his depression. Dr. Van Erden's 'closing summary' in December 1980 emphasized again that Rietsema 'continues to be his own worst enemy' and that psychological treatment was only 'minimally successful' due to Rietsema's refusal to follow medical advice. In 1981 Dr. Solomea J. Goldberg, a psychiatrist, also found him 'oriented as to time, place, and person.'
 
 
 28
 'Special deference is owed to a credibility finding' by the ALJ as the trier of fact. Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir. 1978). Contrary to precedent, the majority essential allows the claimant's subjective testimony of pain alone to establish the grounds for total disability. See Lashley v. Secretary, 708 F.2d 1048, 1059 (6th Cir. 1983).
 
 
 29
 Finally, the claimant himself gave testimony that suggested his possession of at least minimally sufficient physical and mental capabilities. According to his own testimony, for example, Rietsema drives an old truck occasionally. He has a female friend whom he visits, with whom he goes to church, and to whom he sometimes brings over his laundry to wash in her machine. He still tends a little garden and mowed his overgrown lawn at the request of the city. He often goes to a store named Bushmer's and takes a fifteen minute walk to a bowling alley where he gets a cup of coffee in exchange for cleaning out ashtrays. He also does a little grocery shopping for himself.
 
 
 30
 In sum, I would remand for a further hearing as to whether Rietsema is entitled to benefits after appointment of counsel to assist him because of his evident mental and emotional problems.