793 F.2d 1291
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NETTIE COLE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 84-3967
 United States Court of Appeals, Sixth Circuit.
 5/14/86
 
 REVERSED AND REMANDED
 S.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 BEFORE: MERRITT and JONES, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Nettie Cole appeals the district court's affirmance of the denial of disability benefits by the Secretary of Health and Human Services. On consideration of the record, the briefs, and oral arguments, we reverse.
 
 
 2
 At the ALJ hearing in March 1981, Nettie Cole was 46 years old. She had an 11th grade education. Her work history was as follows: PBX operator from 1964 to 1966, grocery store cashier from 1971 to 1972, and factory assembler and inspector from 1972 to 1979. She quit work in January 1979 because she had severe low back pain and could not sit for the hours required.
 
 
 3
 Mrs. Cole has two impairments: a back problem and an emotional problem. The history of the back problem is as follows. In 1973, while she was working as an assembler, Cole began having difficulty with her right arm and hand. She eventually underwent surgery of the cervical spine for fusion of two discs. She recovered and returned to work. Several years later she began suffering pain in the lumbar spine. Dr. Rodeghero, who had been treating Mrs. Cole since 1970, reported in 1979 that she suffered from lumbar disc lesion and chronic lumbosacral strain. The doctor stated that a myelogram had been done and that five other doctors had been consulted, including neurosurgeons, orthopedic specialists and a psychiatrist. No surgery was advised.
 
 
 4
 In November 1980, Mrs. Cole was examined by Dr. Jebsen on behalf of the Secretary. He noted stiffness in the neck and low back, which he found consistent with the neck fusion and lower back strain, and sluggishness in certain reflexes. He considered her disabled only from heavy employment.
 
 
 5
 Mrs. Cole also suffers from a mental impairment. Her daughter was born with a serious kidney abnormality, and the constant stress has caused recurrent anxiety and depression. When the child underwent critical surgery in 1968, Mrs. Cole suffered a complete collapse and underwent psychiatric hospitalization.
 
 
 6
 In August 1980, Mrs. Cole was notified that, in regard to her claim for Social Security benefits, another woman's file had gotten mixed up with hers, and the determination granting benefits was being reopened. Mrs. Cole became so depressed that she was hospitalized. In October 1980 the hospital psychiatrist, Dr. Campbell, who had treated Cole throughout her eleven-day hospitalization and on three occasions afterwards, stated his opinion that she was totally disabled from any gainful work. He prescribed two daily medications to control the depression.
 
 
 7
 In January 1981, Mrs. Cole visited the Secretary's psychiatric examiner, Dr. Veveris. The diagnosis was depressive neurosis. The doctor concluded that Mrs. Cole's 'ability to withstand the stress and pressures associated with day-to-day work activity is severely impaired because of her pain.' The doctor stated, however, that 'her psychiatric impairment is not severe enough to prevent her from functioning.'
 
 
 8
 In April 1981, Dr. Campbell provided an update. He said that Mrs. Cole was improving, but that the back pain causes stress that limits functioning, and the inability to work causes further stress.
 
 
 9
 The ALJ denied benefits on the grounds that, while the impairments were severe and prevented her from returning to the factory work, Mrs. Cole had the ability to do certain simple clerical and telephoning jobs as described by the vocational expert. The ALJ also relied on his own observations of Mrs. Cole's level of pain, noting for example that she 'did not cry or grimace throughout the hearing.'
 
 
 10
 The report of a physician who has treated a claimant for a long time is entitled to greater weight than a one-time examination by the Secretary's physician. E.g., Lashley v. Secretary HHS, 708 F.2d 1048 (6th Cir. 1983); Allen v. Califano, 613 F.2d 139 (6th Cir. 1980). Dr. Campbell saw Mrs. Cole during her eleven-day hospitalization and for several visits afterward; Dr. Veveris saw Cole once. Similarly, Dr. Rodeghero treated Mrs. Cole for over nine years and sent her to numerous specialists for consultation reports; Dr. Jebsen saw Cole only once. The medical reports here were not in significant conflict in regard to diagnosis and treatment; the only difference was in their conclusions in regard to the degree of impairment. We find that the ALJ erred in giving total weight to the one-time examinations by the Secretary's examiners.
 
 
 11
 Next, in regard to the evaluation of pain, the Act and regulations require that there be some medically determinable source of the pain. See 20 C.F.R. Sec. 404.1529. Mrs. Cole's neck surgery and recent lower back strain and disc lesion constituted an acceptable medical showing under section 404.1529 to substantiate her claim of disabling pain. The Sixth Circuit has renounced the 'sit and squirm' test and has held that although the ALJ's observations and assessment of the claimant's credibility are material and relevant, the ALJ's observations in regard to the person's ability to withstand pain at the hearing are not evidence of the absence of pain. See, e.g., Weaver v. Secretary HHS, 722 F.2d 310, 312 (6th Cir. 1985). The ALJ erred in considering such 'evidence.'
 
 
 12
 We further note that Mrs. Cole's severe emotional impairment is inseparable from her physical impairment. As several physicians noted, her fragile emotional state makes her unable to cope with the back pain she experiences, and the back pain in turn increases the stress and anxiety.
 
 
 13
 In sum, we find that the ALJ erred in giving insufficient weight to the reports of treating physicians, in applying the impermissible 'sit-and-squirm' test, and in failing to recognize the interdependent nature of the impairments. Accordingly we hold that the conclusion of the ALJ was flawed by errors of law and was not supported by substantial evidence. We therefore REVERSE and REMAND for an award of benefits.