765 F.2d 146
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DARNELLE STELLUTE, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-1379
 United States Court of Appeals, Sixth Circuit.
 5/21/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: ENGEL and JONES, Circuit Judges; and HOLSCHUH, District Judge*.
 PER CURIAM.
 
 
 1
 Claimant appeals from the summary judgment affirming the Secretary's denial of social security disability benefits. She claims that the Secretary's decision is not supported by substantial evidence. We disagee and affirm the judgment of the district court.
 
 
 2
 Claimant, Darnelle Stellute filed an application for social security disability benefits on June 2, 1981, alleging that she became disabled on December 14, 1970. A certificate of applicant for payments on behalf of another was filed on June 15, 1981 by claimant's mother. After a hearing in which claimant's mother and a vocational expert testified, an ALJ determined that claimant is not entitled to disability benefits. After completing her administrative appeals, claimant filed a complaint in the district court. The district court granted the Secretary's motion for summary judgment and claimant appeals.
 
 
 3
 Darnelle Stellute was born on November 27, 1948, and is currently 36 years old. She was 22 years old at the date of alleged onset of disability, December 14, 1970. Claimant's last date of insured status was September 30, 1971. Claimant completed high school and has worked as a salad girl, stock clerk and sales clerk. She left work on December 14, 1970 to have her baby.
 
 
 4
 At the age of twenty, shortly after graduation from high school, the claimant had been hospitalized at Wyandotte General Hospital. The claimant was admitted to the hospital on December 3, 1968 by her family physician, Dr. L. A. Comstock. The mental status examination completed by the psychiatrist, Dr. A. L. Hughett, indicated that at that time the claimant was completely orientated, had a good memory, and had no evidence of a thought disorder. In a telephone report dated August 4, 1981, Dr. Hughett stated that he had known the claimant for eleven to twelve years and that she was hospitalized under his care twice in 1981. Although his medical records before 1975 were destroyed in a flood, Dr. Hughett reported that the claimant's condition had 'gradually deteriorated' since 1970 and that her current (1981) diagnosis was paranoid schizophrenia. She had been actively delusional and had had auditory hallucinations without specification. She unsuccessfully tried to work for three weeks in 1975 and quit because of her paranoia. Dr. Hughett stated that claimant has been unable to work since some time late in her pregnancy when she quit her work.
 
 
 5
 Dr. Comstock, in a November 26, 1982 letter, stated that the claimant had not been under his treatment since her pregnancy and that he understood she was taking 'prescribed night medicine only' and was 'much easier to live with.' (R. 102). Dr. Comstock also stated that:
 
 
 6
 My office records shows that I advised psychiatric evaluation and necessary treatment for Darnell in the summer of 1964 when she was 16 years old. She was treated by a Dr. Erickson, psychiatrist, of Wyandotte Michigan. She was treated for depression and regression from reality by 15 electro-shock treatments. Prescribed medicines included compazine and stalazine.
 
 
 7
 In April of 1967 at aged 18 years she was married to a very fine young man who was to serve in the Vietnam war. Her adjustment to married life was poor. When her husband was in Vietnam, she tried to work. She failed at the most simple job requirements.
 
 
 8
 The claimant's mother testified that claimant was generally able to care for her baby. She also testified to claimant's paranoid symptoms including apparent hallucinations in recent years, particularly 1980, but 'didn't . . . know' whether those symptoms were manifested in 1971. The vocational expert, Dr. Andrew Glatter, testified that an individual with claimant's condition could work in a 'simple and singular, isolated kind of a job' which she had previously performed such as stock clerk or salad girl.
 
 
 9
 Based on this evidence, the ALJ concluded that claimant was not prevented from engaging in substantial gainful activity prior to the expiration of her insured status on September 30, 1971. He found that claimant had the capacity to return to her past relevant work as a stock or salad girl at that time.
 
 
 10
 Review of the Secretary's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the Secretary's decision. 'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..' 42 U.S.C. Sec. 405(g) (1976). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In determining whether the evidence is substantial we must "take into account whatever in the record fairly detracts from its weight." Beavers v. Secretary of H.E.W., 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).
 
 
 11
 We find no evidence from which we can conclude that claimant became disabled prior to the termination of her insured status. The evidence in this case clearly shows that claimant had psychological problems prior to the termination of her insured status. The evidence also shows that claimant's condition has gradually worsened to the point that she was clearly disabled at the time of the hearing. The evidence does not establish, however, that claimant was unable to engage in substantial gainful activity between the time she quit work to have a baby in July of 1970 and September 30, 1971--the date her insured status expired. Consequently, there is substantial evidence to support the Secretary's decision denying benefits.
 
 
 12
 We reject claimant's contention that she was deprived of a full and fair hearing. Accordingly, we AFFIRM the judgment of the district court.
 
 HOLSCHUH, District Judge, dissenting
 
 13
 I respectfully dissent.
 
 
 14
 It is undisputed, as the majority acknowledges, that claimant was 'clearly disabled at the time of the hearing.' As Dr. Hughett, her attending psychiatrist for many years, reported, claimant is both psychotic and out of contact with reality. She has auditory hallucinations and delusions that a group of doctors are conspiring to experiment on her brain by surgery. She is afraid of everyone hurting, controlling or spying on her, and her relationships with others are severely impaired. The diagnosis is schizophrenia, paranoid type, severe, and the prognosis is poor. The critical issue, of course, is the date of the onset of this psychiatric disability, i.e., whether claimant was so disabled prior to the expiration of her insured status on September 30, 1971. My inability to concur in the conclusion of the majority members of the panel arises from their opinion that, 'We find no evidence from which we can conclude that claimant became disabled prior to the termination of her insured status.' I am of the opinion that there is such evidence in the record, and, of considerable importance, that the medical evidence showing such disability is uncontradicted by any other medical evidence. I conclude, therefore, that the Secretary was not free to reject such evidence, particularly from claimant's treating psychiatrist, and that no substantial evidence supports the Secretary's denial of disability benefits.
 
 
 15
 Dr. L. A. Comstock, who delivered claimant when she was born in 1948, reported that he advised psychiatric evaluation and necessary treatment for claimant as early as 1964 when claimant was 16 years old. At that time she was treated by a psychiatrist for depression and regression from reality. The treatment included 15 electro-shock treatments as well as medication. Four years later, in 1968, Dr. Comstock referred claimant to another psychiatrist, Dr. A. L. Hughett, and claimant was hospitalized under Dr. Hughett's care for seventeen days. Dr. Hughett diagnosed her condition as an hysterical personality disorder and found her to be a definite suicidal risk. She was discharged because her husband was coming home from the service, but Dr. Hughett's discharge summary stated that claimant would require long term treatment and would be seen on an out-patient basis.
 
 
 16
 It is clear that Dr. Hughett continued to treat claimant, although, unfortunately, his records dealing with that treatment and claimant's condition prior to 1975 were destroyed in a flood in 1975. In his report of February 28, 1983, Dr. Hughett, as claimant's attending psychiatrist, gave his medical opinion concerning both the psychiatric basis for her disability and the date when she became unable to work because of that disability. Dr. Hughett reported:
 
 
 17
 Darnell Stellute has been disabled for many years. She has not been able to work since the birth of her baby (approximately 1970). Unfortunately, her old record was destroyed in a flood in 1975 and I can't give you specific information about her early history. However, she was in regular treatment and has been unable to work since some time late in her pregnancy. At that time, she was working at Winkelman's downtown Detroit and has not worked any place since. She is a chronic paranoid schizophrenic and has extreme difficulties relating with people. This has been the reason for her disability.
 
 
 18
 The testimony of claimant's mother confirms Dr. Hughett's medical opinion that claimant's disability occurred at about the time (1970) when her baby was born. In one of his questions to claimant's mother, the ALJ said:
 
 
 19
 Now, if she was not capable of taking care of her own baby I think that's pretty good evidence she wasn't capable of doing anything else either possibly.'
 
 
 20
 The response by the mother was that, 'She couldn't a took care of the baby alone I don't think.' (A.R. 43). It appears that both claimant's mother and her husband had to help claimant take care of the baby. (A.R. 42.) According to claimant's mother, claimant 'was worse then than she is right now.' (A.R. 57.)
 
 
 21
 While it is true that the Secretary is not bound by a treating physician's legal determination of disability, Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir. 1980), cert. denied, 461 U.S. 957 (1983); 20 C.F.R. Sec. 404.1527, the medical opinions and diagnoses of treating physicians are in fact entitled to substantial weight. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1054 (6th Cir. 1983); Bowie v. Harris, 679 F.2d 654, 656 (6th Cir. 1982); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980); Aubeuf v. Schweiker, 649 F.2d 107, 112 (2d Cir. 1981).
 
 
 22
 In the present case, the critical issue is not whether claimant is disabled--that is conceded--but simply the date of the onset of that disability. Dr. Hughett gave his expert medical conclusion on that issue, based upon his long treatment of claimant; it is supported by all of the clinically acceptable data that is now available; and it is consistent with all other medical evidence in the record. In the absence of any other medical evidence to the contrary, I do not believe that the Secretary was at liberty to reject that opinion and to deny claimant benefits as a result of her long-standing psychiatric disabilities.
 
 
 
 *
 Honorable John D. Holschuh, District Judge, United States District Court for the Southern District of Ohio, sitting by designation