791 F.2d 934
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ZERELLA ROBERTS, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 85-3362
 United States Court of Appeals, Sixth Circuit.
 4/23/86
 
 REVERSED AND REMANDED
 S.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 Before: MARTIN and GUY, Circuit Judges; and REED,* District Judge.
 PER CURIAM.
 
 
 1
 Zerella Roberts filed concurrent applications for disability insurance and supplemental security income benefits on May 6, 1980. Her applications were both denied initially and on reconsideration. Roberts then requested a hearing by an administrative law judge, whose decision was vacated by the Appeals Council. The Appeals Council remanded the case to the administrative law judge for further investigation of Robert's mental impairment. The administrative law judge, upon rehearing, again denied Roberts' application. This denial has been affirmed by the Appeals Council and the district court. Roberts appeals the Secretary's decision as to her disability benefits only.
 
 
 2
 Roberts was forty-six years old when she applied for disability benefits. She has had an eleventh-grade education. She last worked in 1972 as a salad maker, but stopped because of arthritis in her left leg, left hip, and right wrist, and a 'charley horse' in her left leg. At the second hearing, Roberts testified that she had severe pain in her entire left side, and that the level of pain often caused her to cry. She also testified that right wrist surgery was planned for October 1982 for a bone graft from her forearm to her wrist. Roberts indicated that she is able to sit for not quite a hour, stand for only about fifteen minutes, and walk for about one block without severe pain.
 
 
 3
 The claimant has also experienced serious psychological problems. Her own testimony was that she was frequently depressed, and that her pain caused her to be nervous and cry often.
 
 
 4
 The medical evidence concerning the claimant's psychological condition indicates that she has little insight into her emotional problems. On March 17, 1981, Roberts was examined by Dr. Eugene S. Cherry, a psychologist. Dr. Cherry administered several psychological tests and conducted a clinical interview. Dr. Cherry diagnosed Roberts as suffering from: (1) psychophysiological reaction associated with arthritis and hypertension, (2) depressive neurosis with anxiety (3) chronic brain syndrone with learning disability. Dr. Cherry concluded:
 
 
 5
 Mrs. Roberts is impaired in her ability to relate to others, including fellow workers and supervisors, as a result of intense unmet dependency needs and her tendency to express her emotions in heightened physical tensions with resultant pain. While able to understand and follow instructions, she cannot maintain her attention to perform simple repetitive tasks. Her performance on the ability tests does indicate her capacity for short-run performance in simple, repetitive tasks. Continued experience with pain, however, in a work situation, would require Mrs. Roberts to absent herself at least one-half the time. Thus she is capable of working for Welfare some five days per month. However, the examiner feels that she would not be able to function more than one day per week at any job.
 
 
 6
 Dr. G. M. Sastry, a psychiatrist, reached similar conclusions when he examined Roberts on January 10, 1982. Dr. Sastry concluded that Roberts suffered from a combination of psychiatric and physical impairments which would prevent her from engaging in any gainful activity, and added that he believed the impairments to be permanent and total.
 
 
 7
 Pursuant to the Appeals Council's order, Roberts was next examined by Dr. Ronald Moomaw on behalf of the Social Security Administration. Dr. Moomaw diagnosed dysthmic disorder, possibility of major depression, and numerous somatic complaints. He observed her anxiety during the interview, and noted that immediately following the interview, Roberts ran into the bathroom and vomited a number of times. Dr. Moomaw evaluated the degree of claimant's limitation in her ability to, on a sustained basis, perform work requiring frequent contact with others and perform complex tasks as moderately severe. He estimated her degree of limitation in ability to comprehend and follow instructions, perform work where contact with others will be minimal, and perform simple repetitive and varied tasks as moderate.
 
 
 8
 On November 20 and 30, 1982, Roberts was examined by another psychologist, Dr. Chambers, who diagnosed her condition as chronic dysthmic disorder with loss of cognitive efficiency, generalized anxiety disorder, and elements of dependent personality disorder. He concluded that these problems precluded Roberts from engaging in substantial gainful employment.
 
 
 9
 In a Supplemental Questionnaire, Dr. Chambers found claimant's ability to relate to other people and degree of restriction of daily activities to be impaired to a moderately severe degree. He also indicated that claimant's degree of constriction of interests to be impaired to a severe degree. Furthermore, he concluded that claimant's ability to perform routine, repetitive activities, tolerate work pressures, achieve production requirements, understand, retain and carry out instructions, and perform work requiring frequent or minimal contact with others were poor.
 
 
 10
 These conclusions are consistent with the conclusions of two other psychiatrists who examined Roberts in early 1983. Dr. Michael J. Belcher found Roberts to be unable to engage in substantial gainful employment because of the psychological impairments, and indicated that her long-term prognosis was poor. Significantly, Dr. Kyle Park, Roberts' treating and attending psychiatrist, believed her to be totally and permanently disabled. He stated:
 
 
 11
 Based on our psychiatric evaluation and consultation, Ms. Roberts does have psychiatric impairment, which would prevent her from engaging in substantial gainful employment. She has periods of anxiety, depression and tension which is in a chronic state and has persisted since 1972. She has very low stress tolerance and would not be capable of withstanding work pressures.
 
 
 12
 We believe that under the interpretation of the severity requirement of the sequential evaluation procedure in 20 C.F.R. Sec. 416.920 adopted by this Court in Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985), and Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir. 1985), the administrative law judge's determination that Roberts does not suffer from severe impairment is not supported by substantial evidence. Under Salmi, an impairment is non-severe 'only if, regardless of the claimant's age, education, or work experience, the impairment would not affect a claimant's ability to work.' Salmi, 774 F.2d at 692. The Farris court determined that an impairment can be considered as not severe only if the impairment is a 'slight abnormalty which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' Farris, 773 F.2d at 90. Roberts' age, education, and work experience were not considered by the administrative law judge.
 
 
 13
 The numerous psychological evaluations contained in the record clearly show claimant's psychological impairment to be much more serious than a 'slight abnormality.' Several psychiatrists and psychologists in fact concluded that Roberts' condition rendered her totally and permanently disabled.
 
 
 14
 The administrative law judge relied on the testimony of Dr. Moomaw in determining that Roberts' impairment was not severe, notwithstanding the fact that both her treating physicians found her unable to engage in substantial gainful work activity. These reports, by Dr. Sehear and Dr. Park, were not even mentioned in the administrative law judge's opinion. The opinions of treating physicians should be given greater weight than those held by physicians whom the Secretary hired and who examined the claimant only once. Farris, 773 F.2d at 90; Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1054 (6th Cir. 1983). We therefore do not believe that substantial evidence supported the administrative law judge's decision under any interpretation of the severity standard, but certainly under the 'de minimis' or 'slight abnormality' standard adopted by this Circuit the decision must be reversed.
 
 
 15
 The decision of the Secretary is therefore reversed, and the case is remanded.
 
 
 
 *
 Honorable Scott Reed, United States District Judge for the Eastern District of Kentucky, sitting by designation