811 F.2d 605
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mabel HARRISON o/b/o Kenneth G. Harrison, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1089.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1986.
 
 Before LIVELY, Chief Judge, and WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Mabel Harrison appeals from the district court's judgment affirming the Secretary's determination that her deceased husband, Kenneth G. Harrison, is not entitled to disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 Mrs. Harrison filed an application for disability benefits on behalf of her deceased husband on June 28, 1982, approximately two weeks subsequent to his death. She claimed that he was unable to work as of September, 1979 due to hypertension and acute aortic dissection. This application was denied initially on September 1, 1982, and upon reconsideration on February 17, 1983. The Secretary had determined that Mr. Harrison became disabled on April 26, 1982 when he entered Botsford Hospital with an aortic dissection. However, since Mr. Harrison died approximately one and one-half months subsequent to this date the claim was denied because, pursuant to 20 C.F.R. Secs. 404.315(d) and 404.320(b)(4), a person must be disabled for five full calendar months in order to be entitled to disability benefits or a period of disability. Mrs. Harrison appealed the determination of the disability onset date, claiming that Mr. Harrison became disabled in early 1980. An administrative hearing on this claim was held on January 6, 1984. Mr. Harrison appeared, but was not represented by counsel at this hearing. She requested that the hearing be postponed, claiming that she did not have time to secure an attorney because she had received notice of the hearing date just two days earlier. The delay in her receipt of the notice of the hearing apparently resulted from the fact that the street number was omitted from the address. She also claimed not to have received a May, 1983 letter from the Office of Hearings and Appeals which advised her to obtain an attorney as soon as possible. The May, 1983 letter was properly addressed and was not returned to the Secretary as undelivered. The ALJ denied her request for a postponement and proceeded with the hearing.
 
 
 3
 Mrs. Harrison testified at the hearing on behalf of her deceased husband, Kenneth Harrison. Mr. Harrison was born on March 18, 1918 and had a tenth grade education. Mr. Harrison last worked in September, 1979 as a tool and die maker at Four Star Corporation. He had worked for this corporation since 1968 and stopped working solely because the corporation went out of business. After losing this job he received the maximum of 26 weeks of unemployment benefits. He applied for over ten other tool and die maker jobs between the time of his layoff and his death in June, 1982; however, due to his high blood pressure he was unable to pass any of the examinations required by the various employers as a condition of employment.
 
 
 4
 Mrs. Harrison testified that Mr. Harrison's hypertension caused him to experience dizziness and shortness of breath. He would become dizzy after standing for thirty minutes and sometimes when sitting up. He would become short of breath after climbing three or four stairs. Mrs. Harrison also testified that her husband was able to lift only five or ten pounds. His activities included building models, reading the Bible, watching television, playing the organ and attending church services. He was able to drive a car around town in 1981 and early 1982. In the summer of 1981, Mr. Harrison went fishing several times with his son. Mrs. Harrison stated that her husband's high blood pressure condition was first discovered in 1968. This condition was treated primarily with medication. Mr. Harrison's treating physician was Dr. Stehouwer. Dr. Stehouwer's office was located approximately 220 miles from Mr. Harrison's home. Mr. Harrison personally saw Dr. Stehouwer only once between December, 1981 and April, 1982. Mrs. Harrison stated that she called Dr. Stehouwer at least once a week to report her husband's blood pressure and to receive instructions on altering the amount of his medication.
 
 
 5
 The following pertinent medical evidence was introduced. In a report dated July 17, 1982 Dr. Stehouwer stated that he treated Mr. Harrison off and on from 1977 to February, 1982 for hypertension and tendencies for depressive episodes. Dr. Stehouwer stated that Mr. Harrison's medication was changed in April, 1981 because of blood pressures in the area of 160/110 and 150/100 and that there was a good response to the new regimen. In February, 1982, Mr. Harrison's blood pressure was 120/90 while sitting with a drop to 90 systolic upon standing. Dr. Stehouwer changed Mr. Harrison's medication at this time and opined that there appeared to be some deterioration of Mr. Harrison's general condition as a result of the orthostatic hypertension. He further noted that Mr. Harrison's cardiovascular problems were longstanding.
 
 
 6
 In March, 1977 Mr. Harrison was hospitalized at Mercy Hospital in Cadillac, Michigan, and was diagnosed as suffering from acute and chronic fatigue, degenerative arthritis and depression. He was noted as having a history of high blood pressure; however, during the hospital stay his blood pressure was normotensive on the low side of normal.
 
 
 7
 Mr. Harrison was not hospitalized again until April 26, 1982, when he was admitted to Botsford General Hospital complaining of severe chest pain, dyspnea and diaphoresis. His blood pressure was 190/100 on admittance but dropped to 140/80 after taking medication. By April 28, 1982 he appeared very stable and he was transferred to St. Joseph Mercy Hospital in Ann Arbor at the family's request. On April 29, 1982 Mr. Harrison was diagnosed as having acute aortic dissection. He underwent emergency surgery for aortic valve replacement, replacement of the ascending aorta and reimplantation of his coronary artery. Mr. Harrison's condition steadily declined after this operation and he died at St. Joseph's on June 12, 1982 from congestive heart failure.
 
 
 8
 On January 27, 1984, the ALJ issued his decision, finding that Mr. Harrison was not entitled to disability benefits pursuant to 42 U.S.C. Secs. 416(i) and 423. The ALJ found that Mr. Harrison had a longstanding history of hypertension prior to his death; however, he also found that Mr. Harrison did not have any impairment or impairments which significantly limited his ability to perform basic work-related functions prior to April, 1982. Therefore, he concluded that Mr. Harrison did not have a severe impairment prior to that date. The ALJ did find that a disabling condition was established by the medical evidence as of April, 1982 when Mr. Harrison was admitted to Botsford General Hospital. However, since Mr. Harrison died less than five months after the onset of his disabling condition the ALJ found that Mr. Harrison was not entitled to disability benefits because he was not disabled for five consecutive months as required by 20 C.F.R. Secs. 404.315(d) and 404.320(b)(4). Mrs. Harrison subsequently retained an attorney, who requested, and was denied, review by the Appeals Council.
 
 
 9
 Mrs. Harrison timely filed the instant action with the district court. Mrs. Harrison filed a motion for remand/summary judgment which was referred to a magistrate. The magistrate filed her report and recommendation on May 31, 1985, recommending that Mrs. Harrison's motion be denied and that the Secretary's denial of benefits be affirmed. The district court adopted the magistrate's report and affirmed the Secretary's decision on November 20, 1985. This timely appeal followed.
 
 II.
 
 10
 Mrs. Harrison argues that the ALJ's failure to postpone her hearing to allow her an opportunity to obtain counsel deprived her of due process. She further argues that she was denied a full and fair hearing, contending that the ALJ failed to assist her in developing a complete record. For the following reasons, we believe that her arguments lack merit.
 
 
 11
 Although Mrs. Harrison contends that there is a due process right to be represented by an attorney at the hearing level of social security disability determinations, the law is to the contrary. Prior cases have clearly held that there is no constitutional right to counsel at such a hearing. See, e.g., Clark v. Schweiker, 652 F.2d 399, 403 (5th Cir.1981); Smith v. Secretary of Health, Education & Welfare, 587 F.2d 857, 860 (7th Cir.1978) (per curiam). See also Holden v. Califano, 641 F.2d 405, 408 (6th Cir.1981) ("While the absence of counsel might cause us to scrutinize the record with care, it alone is not a grounds for reversal or remand."). Accordingly, absence of counsel, standing along, does not render a hearing invalid.
 
 
 12
 Claimants do have a statutory right to counsel at a disability determination hearing pursuant to 42 U.S.C. Sec. 406. This right is effectuated by regulation. Pursuant to 20 C.F.R. Sec. 404.938 the Secretary is obligated to notify the claimant of the hearing date as well as the right to representation at the hearing. Mrs. Harrison may contend that she received inadequate notice and that she did not waive her right to counsel at the hearing. However, we need not address these issues because of our determination, as discussed below, that she was not prejudiced by lack of counsel. See Kelley v. Heckler, 761 F.2d 1538 (11th Cir.1985) (per curiam).
 
 
 13
 When a claimant appears without counsel at a hearing an administrative law judge's basic obligation to develop a full and fair record rises to a special duty. Lashley v. Secretary of Health & Human Services, 708 F.2d 1048 (6th Cir. and conscientiously probe into, inquire of, and explore for all the relevant facts, [and] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Lashley, 708 F.2d at 1052 (citations omitted).
 
 
 14
 In the instant case, Mrs. Harrison contends that the ALJ failed to assist her in developing a complete record, and that therefore she was denied a full and fair hearing. In other words, she contends that the ALJ did not fulfill his special duty as set forth in Lashley. Therefore, this court must scrutinize the record to ensure that Mrs. Harrison was afforded a full and fair hearing on her claim.
 
 
 15
 Mrs. Harrison contends that she did not fully understand what she needed to show at the hearing. However, the record reveals that the ALJ fully explained to Mrs. Harrison that her husband must have been disabled prior to April, 1982 to meet the five month disability waiting period before receiving benefits. The ALJ further fully explained that in order to be disabled under the law, Mr. Harrison must have been so disabled that he could not do any work for which he would otherwise qualify based on his age, education, and past work experience and that it was not enough that he was just unable to do his past work. Mrs. Harrison acknowledged that she understood this explanation. Therefore, we find no merit in this contention.
 
 
 16
 As further support for her claim that she was denied a fair hearing, Mrs. Harrison contends that the record is grossly deficient. In particular she argues that the ALJ should have written Mr. Harrison's treating physician and requested more specific information regarding Mr. Harrison's depression and status during the pertinent period. However, Dr. Stehouwer's letter does fully comment on Mr. Harrison's hypertensive condition, setting forth blood pressure readings, prescribed medications and the response thereto. Mrs. Harrison at no time claimed depression as contributing to her husband's disability; therefore, further investigation was not necessary in this respect. Mrs. Harrison also argues that the ALJ should have attempted to obtain copies of some of the employment physicals Mr. Harrison underwent in his unsuccessful efforts to gain employment as a tool and die maker. However, there was no showing that such records even exist. Mrs. Harrison did obtain counsel between the time of the hearing date and her request for review by the Appeal's Council. During this time, Mrs. Harrison and her counsel had ample opportunity to submit the medical evidence that she now complains of; however, no additional records were submitted to either the Appeal's Council or the district court. Therefore, we find no merit in this contention.
 
 
 17
 A review of the record reveals that any and all of Mr. Harrison's hospital records were included in the record, as well as a report from his sole treating physician. Furthermore, the ALJ fully explained to Mrs. Harrison the requisites of a disability determination and he elicited testimony related to Mr. Harrison's symptoms, functional limitations and daily activities. The ALJ also questioned Mrs. Harrison about her husband's medications, hospitalizations and attempts to gain employment. As this Circuit has previously stated, there is no bright line test for determining when the ALJ has failed to fully develop the record; the determination must be made on a case-by-case basis. Lashley, 708 F.2d at 1052. In the present case, we believe that the ALJ met the duties incumbent upon him.
 
 
 18
 Having concluded after reviewing the record, that Mrs. Harrison received a full and fair hearing, we accordingly AFFIRM the judgment of the district court.