816 F.2d 679
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gladys DOWELL for Dyer P. DOWELL, deceased, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant- Appellee.
 No. 86-3254.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1987.
 
 Before KEITH, Circuit Judge, and WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Gladys Dowell appeals from the judgment of the district court affirming the Secretary's denial of social security benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 Dyer Dowell filed an application for disability insurance benefits on October 2, 1979, claiming inability to work as of August 19, 1979, due to heart trouble. On December 15, 1979, the Social Security Administration awarded benefits as of the alleged onset date. However, Mr. Dowell died on January 27, 1980, in the fifth month of his statutory waiting period; therefore, the Secretary determined that benefits were not payable pursuant to 42 U.S.C. Sec. 423(c)(2). Mrs. Dowell filed a request for reconsideration on February 15, 1980, stating that she was entitled to benefits because her husband had lived into the fifth month of his waiting period. On reconsideration, an independent review affirmed the previous ruling denying payment of benefits. Mrs. Dowell then requested an administrative hearing because she disagreed with the Secretary's determination of her husband's disability onset date. An administrative hearing was held on November 26, 1980. Mrs. Dowell was represented by counsel at this hearing. At this time, her counsel argued that the disability onset date was September 14, 1977, and not August 19, 1979. However, the ALJ issued an opinion on January 22, 1981, upholding the onset date of August 19, 1979. The Appeals Council denied Mrs. Dowell's request for review of the ALJ's decision on June 3, 1981.
 
 
 3
 Mrs. Dowell sent letters and additional medical evidence to the Appeals Council after it had denied her request for review. However, after considering this additional material, the Appeals Council concluded that the ALJ's decision would stand as the final decision of the Secretary.
 
 
 4
 Mrs. Dowell then filed an action with the district court. The Appeals Council was unable to locate Mr. Dowell's claim file and the case was remanded, at the Secretary's request, to locate and reconstruct the file. After locating the file and receiving additional medical reports that had not been considered by the ALJ, the Appeals Council vacated the decision of the ALJ and remanded the case to a second ALJ for further proceedings. A second hearing was held on April 25, 1984. Mrs. Dowell was represented by counsel at this hearing.
 
 
 5
 Mrs. Dowell testified at the hearings as to Mr. Dowell's personal history, his work history and his ailments. Mr. Dowell was born on November 25, 1918. He had an eighth grade education and had worked as a machinist and a welder for General Motors-Frigidaire Division over the past 30 years. He retired on September 27, 1974.
 
 
 6
 After his retirement, Mr. Dowell and his wife purchased and lived on a small farm of approximately 13 acres. Mrs. Dowell stated that her husband had been very active on this farm during the first year of his retirement taking care of cattle, a horse and the land. She stated that Mr. Dowell began to reduce his activities in 1976 because he could not physically continue to do all that he had been doing. He began selling the land at that time. She testified that by 1977, Mr. Dowell was not active at all. By this time, the only animals remaining on the farm were Mr. Dowell's two hunting dogs. She further testified that Mr. Dowell began experiencing left leg pain in 1976. In 1977, he also began experiencing pain in his lower back and left hip. In 1978, both legs began to bother him. Mrs Dowell stated that her husband last used his tractor in 1978. Mr. Dowell usually went bird hunting when the season opened. He discontinued this activity in November, 1978,due to pain in his legs and shortness of breath. This condition steadily became worse until the day of his death. Mrs. Dowell further testified that in the spring and early summer of 1979, Mr. Dowell suffered blackout spells. In August, 1979, he began experiencing chest pain. He had not experienced chest pain prior to that time. Mrs. Dowell stated that Mr. Dowell was able to walk only short distances without having to stop and sit down.
 
 
 7
 The following medical evidence is contained in the record. On September 14, 1977, Mr. Dowell was hospitalized complaining of severe low back pain and pain in the left hip with radiation down to his lower right extremity. He was discharged as improved seven days later with diagnoses of mechanical low back syndrome with degenerative disc disease in the lower lumbar region; abdominal aneurysm at the level of L4., diverticulosis of the sigmoid colon: diabetes mellitus, mild to moderate; and exogenous obesity.
 
 
 8
 Mr. Dowell was hospitalized a second time on August 9, 1979, complaining of chest pain that began occurring about three days prior to admission. He reported that he was able to walk without difficulty and that he had been experiencing intermittent aching pain in his left buttocks area which was brought on by exercise and relieved by rest. This condition was noted as being classic intermittent claudication of the left hip. An EKG failed to reveal evidence of a myocardial infarction. He was discharged on August 13, 1979, with a diagnosis of arteriosclerotic heart disease and peripheral vascular disease with intermittent claudication.
 
 
 9
 On August 19, 1979, Mr. Dowell was readmitted to the hospital complaining of severe substernal chest pain, nausea and diaphoresis. He was placed in the coronary care unit. EKG's were consistent with acute anterior wall myocardial infarction. He was discharged as improved on August 28, 1979 The final diagnosis was atherosclerotic heart disease with an anatomy of acute anterior infarction and a physiology of coronary insufficiency and mild congestive failure, compensated He was given various medications and advised to rest at home, to do normal physical activities around the house and to avoid any strenuous activity.
 
 
 10
 Following this hospitalization, a September 11, 1979 medical progress note indicated that Mr. Dowell had experienced no further chest pain or shortness of breath since his discharge. An October 2, 1979 progress note indicated that Mr. Dowell was almost back to full regular activities and that his main limiting factor was claudication in his left leg. He had suffered two very mild episodes of angina which responded quickly to nitroglycerin. A November 20, 1979 progress note indicated that Mr. Dowell was having problems with exertional chest pain and continued severe claudication in the left leg. Arrangements were made for angiographic studies of his heart and lower extremities with possible surgical intervention.
 
 
 11
 Mr. Dowell was admitted to Vanderbilt University Hospital on December 6, 1979, for a cardiac catheterization with coronary arteriograms. The catheterization revealed moderately reduced left ventricular function and severe three vessel disease with an occluded left anterior descending artery. Coronary bypass surgery was recommended. The final diagnosis was coronary artery disease; intermittent left lower extremity claudication; elevated triglyceride and cholesterol; and mild adult onset diabetes mellitus.
 
 
 12
 Mr. Dowell was readmitted to Vanderbilt University Hospital on January 6, 1980, for coronary artery bypass surgery. This surgery was performed and he was discharged on January 17, 1980, with a final diagnosis of ischemic heart disease.
 
 
 13
 Mr. Dowell died on January 27, 1980. The immediate cause of death was pulmonary embolism due to, or as a result of, atherosclerotic heart disease. The interval between the onset of the pulmonary embolism and death was immediate and the interval between the onset of the atherosclerotic heart disease and death was four months.
 
 
 14
 In a letter dated October 19, 1979, Dr. Vossel, a treating physician, reported that Mr. Dowell suffered from coronary artery disease and peripheral vascular disease which permitted Mr. Dowell to walk only a short distance before experiencing claudication. In a physical capacities evaluation, he reported that Mr. Dowell could lift 10 pounds or less frequently, stand or walk one hour per day and could not sit and work for six out of eight hours. In a letter dated April 14, 1981, Dr. Vossel stated that Mr. Dowell had a very severe, diffuse atherosclerotic disease that obviously had been going on for many years.
 
 
 15
 In a letter dated March 10, 1981, Dr. Jones, another treating physician, stated that he had treated Mr. Dowell from April, 1977, to November, 1978,for mechanical back syndrome, diabetes mellitus and abdominal aneurysm. He opined that Mr. Dowell was totally and permanently disabled during that time.
 
 
 16
 In a letter dated June 4, 1981, Dr. Perry, another treating physician, stated that he first saw Mr. Dowell on December 6, 1979. He stated that Mr Dowell's claudication was of significant and limiting proportions at that time and that Mr. Dowell's coronary disease was an even greater limiting factor. However, Dr. Perry stated that he did not know when Mr. Dowell's arterial insufficiency of the left leg had reached significantly disabling proportions, although he suspected that Mr. Dowell's problems were of disabling proportions before August, 1979.
 
 
 17
 On December 13, 1979, Dr. Rayburn, a consulting physician, opined that Mr. Dowell met the impairment requirements of 20 C.F.R. pt. 404, Subpt. P, app. 1, Sec. 4.04Bl. This opinion was based on an August 22, 1979 EKG of Mr. Dowell.
 
 
 18
 After considering the documents in the record and the hearing testimony, the ALJ issued a decision on May 18, 1984, finding that Mr. Dowell had become disabled as defined in the Social Security Act, commencing November 25, 1978. However, the Appeals Council did not adopt the ALJ's decision. The Council opined that the medical evidence of record failed to establish a severe impairment prior to August 19, 1979, the date upon which Mr. Dowell had originally claimed disability.
 
 
 19
 The Appeals Council noted that there was little history of medical treatment from September, 1977, until August, 1979, when Mr. Dowell had a myocardial infarction. Additionally, the Appeals Council noted that Mr. Dowell's own statements did not support his widow's contention that he was disabled prior to August 19, 1979. Mr. Dowell had stated in his disablity application that his illness did not disable him until August 19, 1979, and his January,1980 hospital report showed that he indicated that he had always been healthy until August, 1979. After making this determination, the Appeals Council went on to deny disability benefits because Mr. Dowell died prior to the expiration of the statutory five-month period.
 
 
 20
 Mrs. Dowell timely filed the instant action with the district court pursuant to 42 U.S.C.Sec. 405(g). The Magistrate issued his Report and Recommendation on September 12, 1985, granting judgment to the Secretary. The district court adopted the Magistrate's Report and Recommendation on December 18, 1985, thereby affirming the Secretary's decision to deny benefits. This pro se appeal followed.
 
 II.
 
 21
 Pursuant to 42 U.S.C. Sec. 405(g), the Secretary's findings are conclusive if supported by substantial evidence. For there to be substantial evidence there must be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This court cannot base its decision entirely upon a single piece of evidence; the record must be evaluated as a whole. Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).
 
 
 22
 This deferential standard of review applies only to resolving issues of fact and credibility.Wiggins v. Schweiker, 679 F.2d 1387 (11th Cir. 1982); Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir. 1978). Even :f the reviewing court wculd resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1053 (6th Cir. 1983).
 
 
 23
 In the memorandum attached to her Notice of Appeal, Mrs. Dowell argues that there is not substantial evidence in the record to support the Secretary's determination of the onset date of her husband's disability. In addition to this argument, she also contends that her husband was prevented "from making a decision to seek an earlier date of disability than he had claimed at the time he filed his application." Although Mrs. Dowell may believe this contention, the record clearly shows that the Secretary afforded Mrs. Dowell the opportunity to claim and prove an earlier onset date. After receiving her first request for an administrative hearing, in which she stated that she disagreed with the Secretary's determination of the onset date, the Secretary granted a hearing solely for that purpose. Additionally, the Appeals Council considered supplemental evidence offered by Mrs. Dowell regarding her contention that her husband was disabled on an earlier date. Moreover, at the second hearing, the record clearly reveals that Mrs. Dowell once again was afforded the opportunity to present evidence of an earlier onset date. In sum, the Secretary did not preclude Mrs. Dowell from seeking a disability onset date which was earlier in time than the date claimed on Mr. Dowell's application.
 
 
 24
 In support of her argument that the Secretary's decision is erroneous, Mrs. Dowell relies on the medical evidence of record and contends that it shows that her husband was disabled prior to August, 1979. Our review of the medical evidence reveals that the reports of Drs. Jones and Perry are supportive of this contention. However, we do not believe that the Secretary abused his discretion in according little weight to these reports. Dr. Jones' March 10, 1981 report stated that Mr. Dowell was permanently and totally disabled due to mechanical back syndrome, diabetes mellitus and an abdominal aneurysm from April, 1977, to November, 1978. However, as noted by the Appeals Council, this conclusory opinion was in conflict with the medical evidence as a whole as it related to the pertinent period and lacked findings indicative of an impairment of such severity as to be consistent with his conclusion. Although this Circuit has consistently held that a treating physician's diagnosis is to be accorded substantial deference, this is only appropriate if the treating physician supplies sufficient data to substantiate his diagnosis. See Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). In the instant case, Mr. Dowell was hospitalized in September, 1977, for his back pain; however, the records indicate that he improved during the course of his hospital stay and was discharged after a one-week stay. Subsequent to this hospitalization, the record is devoid of any further medical evidence until Mr. Dowell was hospitalized for chest pains in August,1979. Therefore,we believe that the Secretary was correct in discounting Dr. Jones' report.
 
 
 25
 Dr. Perry's report contains extensive medical data; however, Dr. Perry stated that he could not fix a firm date as to when Mr. Dowell's arterial insufficiency reached significant disabling proportions. He further stated that he was certain that Mr. Dowell's condition was of disabling proportions for several months prior to December, 1979; however, he was only "suspect" that it was to such a degree prior to August, 1979.
 
 
 26
 Ultimately, the claimant has the burden of establishing that he became unable to engage in substantial gainful activity by reason of physical or mental impairments, the existence of which is demonstrated by medically acceptable clinical and laboratory diagnostic findings. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). In the instant case, Mrs. Dowell did not meet this burden in her effort to establish a disability onset date prior to August, 1979, because the medical evidence of record fails to establish a disability prior to August 19, 1979. Subsequent to this date, there is substantial evidence to support the Secretary's determination of an August 19, 1979 onset date.
 
 
 27
 Having concluded that substantial evidence supports the Secretary's decision to deny disability benefits, we accordingly AFFIRM the judgment of the district court.