**Linda S. NABOURS, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

**No. 01–6464.**

United States Court of Appeals, Sixth Circuit.

Nov. 4, 2002.

Before KEITH, KENNEDY, and MOORE, Circuit Judges.

## ORDER

This is an appeal from a district court judgment affirming a decision to deny applications for disability and Supplemental Security income benefits under the Social Security Act. The parties have agreed to waive oral argument and, upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 1997, Linda S. Nabours filed applications for disability benefits and Supplemental Security income based on a combination of physical and mental problems. An administrative law judge ("ALJ") conducted an evidentiary hearing after which he recommended that the applications should be denied. This became the decision of the Commissioner when the Appeals Council adopted the ALJ's recommendation and Nabours took an appeal to the district court on the authority of 42 U.S.C. § 405(g). The matter was referred to a magistrate judge who recommended that the Commissioner's decision should be affirmed. The district court adopted this recommendation over Nabours's objections and this appeal followed.

Claimant Nabours filed her benefits applications on October 15, 1997, based on a combination of impairments, namely, mitral valve prolapse, anxiety attacks, high blood pressure, weak knee and obesity, with an onset date of April 30, 1996. The matter proceeded to an evidentiary hear-

ing before an ALJ where Nabours appeared without counsel after executing a waiver to that effect. The parties produced medical and vocational evidence as well as the testimony of Nabours herself.

Nabours had worked as a wire harness assembler, an unskilled job requiring light exertion, from September 1995 until April 1998. She no longer worked at that job, or anywhere else, and Nabours alleged that this was due to her having chest and back pain, as well as concentration problems, all exacerbated by working. Nabours also complained of anxiety attacks, a weak right knee and a prolapsed heart valve. Nabours also testified that she would occasionally have headaches with her anxiety attacks and she would have to lie down until the headache dissipated. Nabours's description of her personal life was not that of an invalid. She regularly took care of her personal needs, including preparing sandwiches, using a microwave oven, sewing, and doing the dishes. She made trips to town with her mother, socialized with friends, could ride the bus, used the telephone and played with her animals. Nabours confessed to feeling anxious during the hearing, but she was nevertheless able to testify clearly and to the point as to her claims and conditions, and she was able to ask timely, relevant questions of the vocational expert called to assess her claims.

The ALJ also considered evidence from treating and consultative medical personnel. The evidence showed that Nabours, whose height is variously listed at sixty-three or sixty-four inches tall, had her weight fluctuate from 213 pounds on March 14, 1996, to a high of 250 pounds on April 21, 1998, to 249 pounds on June 14, 1998. A treating physician documented Nabours's knee problem, mild heart valve episodes and hypertension, but routinely opined that she could do "light work." Nabours introduced evidence from both treating physicians concerning her allegedly arthritic right knee, but there is no diagnostic (x-ray) evidence to support this claim. Nabours also introduced an opinion from one of her treating physicians who, without diagnostic support and in contravention of his previous stance on the subject, decided that Nabours would be unable to work indefinitely. The consultative examiners were uniform in their opinion that there was no physical or mental impediment to Nabours returning to some kind of light work.

The ALJ also called upon a vocational expert (VE) to assist in the decision making process. The VE testified in response to hypothetical questions posed by the ALJ and Nabours as to the ability of individuals with designated physical or mental problems to return to specific kinds of work, if at all. The VE basically testified that an individual with Nabours's objective proof of physical and mental impairments would be able to return to her previous job of wire harness assembler, but that an individual exhibiting her subjective complaints would not be able to do any work in the economy.

The ALJ then evaluated Nabours's claim through use of the five-step sequential analysis of 20 C.F.R. § 404.1520. Adjudicators use a five-step sequential analysis in making a disability determination under the Social Security Act. If it is determined that a claimant is or is not disabled at any point in the five-step review, further review is not necessary. *Mullis v. Bowen,* 861 F.2d 991, 993 (6th Cir.1988). First, if a claimant is working and engaged in substantial gainful activity, he will not be considered disabled. Second, the claimant must have a severe impairment or combination of impairments that significantly limit his ability to do basic work activities, or he will not be considered disabled. Third, if the claimant has an impairment that meets or equals one of the impair-

ments listed in the regulations, the claimant is presumed to be disabled without further analysis. Fourth, if the claimant has the residual functional capacity to perform "past relevant work," he is not disabled. Fifth, if an individual cannot perform "past relevant work," the residual functional capacity, age, education, and past work experience are considered to determine if other work can be performed.

In the present case, the ALJ reached the fourth step in the analysis and concluded that Nabours was not entitled to benefits as she retained the ability to return to her past relevant work as a wire harness assembler. The ALJ acknowledged the isolated opinion to the contrary from one of Nabours treating physicians but discounted it as it was unsupported by objective diagnostic evidence and was a complete, unexplained contradiction of his previous opinions on the matter. The Appeals Council adopted this conclusion as the final decision of the Commissioner and Nabours took her statutory appeal to the district court.

Nabours obtained counsel for her district court appeal. Counsel raised specific issues for review and moved to remand the claim to the Commissioner for the introduction of new evidence. The magistrate judge to whom the matter was referred recommended denying this motion and, ultimately, the appeal. The district court adopted these recommendations over Nabours's objections and this appeal followed.

Counsel for Nabours first argues that the ALJ erred in failing to develop fully the administrative record by obtaining a certain medical report and in failing to consider the contents of that record. The basis for these related claims is found in a treatment note of one of Nabours's treating physicians. In that note, the emergency room physician who treated Nabours refers to Nabours having undergone a magnetic resonance imaging procedure

(MRI) on November 28, 1997 followed by the notation "Ant. Cruciate Ligament tear." Nabours did not place this MRI report of November 28, 1997, into evidence before the ALJ and it was never made a part of the present record. Nabours's counsel now contends that the ALJ had a special duty to ferret out this report owing to Nabours's pro se status and, having supplemented the record with this report, the ALJ had the duty to consider the MRI report as evidence supporting Nabours's claim that her right knee was arthritic.

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.1986); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983). This court has cautioned that the determination of whether an ALJ has failed fully to develop the record in derogation of this heightened responsibility must be determined on a case-by-case basis, and that it is clear that a claimant may waive his right to counsel. *Id.*

The instant record shows that Nabours, although presenting her case before the ALJ without counsel, was able to put on her case with no discernable problems. There is nothing of record that would indicate anyone took advantage of Nabours when she waived counsel with knowledge of the consequences. She was sufficiently articulate in her direct testimony, she mustered an impressive amount of supporting medical evidence, and she was attuned enough to the testimony of the VE so that she was able (with the help of the ALJ) to conduct cross-examination and cause the

ALJ to submit a new hypothetical question to the VE. There is, in short, nothing in this record to support a claim that the absence of counsel prevented Nabours, or the ALJ, from fully developing the claims and relevant evidence or that this case falls within the *Lashley* "special circumstances" arena. The disposition of this portion of Nabours's argument, that the ALJ erred in failing to *procure* the MRI results, also disposes of any claim that the ALJ erred in failing to *consider* the MRI results that were not of record. These related issues lack merit.

■ Counsel for Nabours argues that the ALJ erred in failing to consider Nabours's obesity-based claim of disability under a standard (Social Security Listing § 9.09) that was superceded by a Social Security Ruling (No. 00–3p). The ALJ issued his decision on May 25, 1999. Social Security Ruling No. 00–3p, 65 Fed. Reg. 31039, was not issued until May 15, 2000. Assuming that the Ruling absolutely controlled the obesity standard, it was issued almost one year *after* the ALJ's decision. It is difficult to see the relevancy of that Ruling to the ALJ's decision. In addition, counsel for the government points out that the relevant controlling regulation concerning obesity determinations, was published on August 24, 1999, and merely cautioned fact finders to take a more holistic approach to an obesity claim, instead of relying solely on the height / weight charts. In fact, the present ALJ decision clearly shows that the ALJ did consider whether Nabours was obese and how it affected her life and functional capacity. This claim lacks merit.

■ Finally, counsel for Nabours claims that the ALJ erred in according more weight to the opinions of non-treating physicians than to the treating physicians. This claim is specifically directed to the single example of a treating physician offering his opinion that Nabours would be unable to work indefinitely. The ALJ properly noted, however, that this lone opinion was unsupported by any contemporaneous, objective diagnostic evidence, it was a reversal of that physician's opinion that Nabours was capable of some kind of light work, and it was contradicted by most of the other opinion evidence submitted. The opinions and diagnoses of treating physicians are entitled to deference, but they are not entitled to complete deference and thus are not controlling if inconsistent with other substantial evidence or unsupported by detailed objective criteria and documentation. 20 C.F.R. §§ 404.1527(d)(2)-(4) & 416.927(d); *Cutlip v. Sec'y of Health & Human Serv.*, 25 F.3d 284, 287 (6th Cir.1994); *Cohen v. Sec'y of Dep't of Health & Human Serv.*, 964 F.2d 524, 528 (6th Cir.1992). This claim lacks merit.

Accordingly, the district court's judgment is affirmed.