**Robie McGLONE, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**Civ. A. No. 94–183.**

United States District Court, E.D. Kentucky.

Sept. 8, 1995.

---

Lloyd E. Spear, Vanceburg, KY, for plaintiff.

John S. Osborn, III, U.S. Attorney's Office, Lexington, KY, for defendant.

## MEMORANDUM OPINION

UNTHANK, Senior District Judge.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative decision of the Department of Health and Human Services, pursuant to the provisions of the Social Security Act; at issue is the denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The case is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. *See* 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. *See* 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)—i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. *See* 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. *See* 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equalling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. *See* 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. *See* 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work—i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. *See* 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

*Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

■ Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. *Jones v. Secretary of Health and Human Services,* 945 F.2d 1365, 1368–1369 (6th Cir.1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner,* 745 F.2d at 387.

■ One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. *Bowie v. Secretary,* 679 F.2d 654, 656 (6th Cir.1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. *Cf. Houston v. Secretary of Health and Human Services,* 736 F.2d 365, 367 (6th Cir.1984); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. *Hardaway v. Secretary,* 823 F.2d 922 (6th Cir.1987). These have long been well-settled principles within the Circuit. *Jones,* 945 F.2d at 1370.

■ Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.1986).

■ Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. *Harris v. Secretary of Health and Human Services,* 756 F.2d 431, 436 n. 2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence

that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. *Id. Accord, Johnson v. Secretary of Health and Human Services,* 794 F.2d 1106, 1113 (6th Cir.1986).

■ In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. *Gooch v. Secretary of Health and Human Services,* 833 F.2d 589, 592 (6th Cir.1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, *Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1082 (6th Cir.1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, *McKnight v. Sullivan,* 927 F.2d 241, 242 (6th Cir.1990).

Additional information concerning the specific steps in the test is in order.

■ Step six refers to the ability to return to one's past relevant category of work. *Studaway v. Secretary,* 815 F.2d 1074, 1076 (6th Cir.1987). The plaintiff is said to make out a *prima facie* case by proving that he or she is unable to return to work. *Cf. Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir.1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. *Id.* at 1053.

■ Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. *E.g., Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors

such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

■ However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness ... manipulative restrictions ... or heightened sensitivity to environmental contaminants ... rote application of the grid [guidelines] is inappropriate ..." *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir.1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. *Ibid.* In such cases, the agency may be required to consult a vocational specialist. *Damron v. Secretary,* 778 F.2d 279, 282 (6th Cir.1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. *Varley v. Secretary of Health and Human Services,* 820 F.2d 777 (6th Cir.1987).

## DISCUSSION

The plaintiff, Robie McGlone, was born April 27, 1960 (Tr. 27, 60, 77, 153) and has a high school education (Tr. 28, 109, 153). His past relevant work consists of various jobs as a truck driver and laborer. (Tr. 29–33, 109, 151–2). He filed applications for DIB and SSI in August, 1992 (Tr. 60–62, 77–80), alleging disability due to a knee injury and arm and shoulder pain (Tr. 77, 105). After his applications were denied initially and upon reconsideration, he requested and received a hearing before an administrative law judge (ALJ).

The ALJ found that, although the plaintiff suffered from several "severe" impairments, including pain and instability of the right knee and right shoulder and arm pain due to bursitis and tendinitis, he nevertheless retained the residual functional capacity to perform work existing in the economy. (Tr. 18). Accordingly, he was not disabled. (Id.).

 The ALJ based his conclusion on Rule 201.27 of the Commissioner's Medical–Vocational Guidelines (the "grids"). Rule 201.27 provides that a person of the plaintiff's age (i.e., 33 at the time of the decision), who is a high school graduate and whose previous work experience is unskilled, will be found "not disabled" even if he is limited only to sedentary level exertion.[1]

On appeal, this court must determine whether the ALJ's conclusion as to the plaintiff's residual functional capacity is supported by substantial evidence, and fairly depicts the plaintiff's condition.

At the hearing before the ALJ, Mr. McGlone testified that he had twisted his right knee in 1989. (Tr. 38). It had been operated on six times (Tr. 41) but still would "give out" at times causing him to fall (Tr. 37). He fell two or three times a week even though he used a knee brace. (Id.). The knee also had pain (Tr. 38) which radiated down his leg (Tr. 40). He also had pain due to bursitis and tendinitis in his right shoulder

(Tr. 38), though it was intermittent and bothered him perhaps two or three times a week (Tr. 39). It was exacerbated by rainy weather, however. (Id.). He took Relafen for his pain and Amitriptyline to sleep; they were only sometimes effective. (Tr. 40–1). He felt he could still lift 20 pounds, but not carry that much, walk two blocks before his leg "starts wearing down," stand half an hour, sit one to two hours, and had trouble raising his right arm overhead or pushing with it. (Tr. 42–3). It was also difficult to bend and stoop because of his knee. (Tr. 43).

Mr. McGlone testified that his household activities had increased in the past year. (Tr. 33). He helped his wife do the laundry, and usually prepared supper before she got home. (Id., Tr. 108). He mowed the grass "a little" (Tr. 34) and helped his wife set their garden (Tr. 37). He drive a car two or three times a week for short distances and visited relatives, but did no shopping. (Tr. 35). He sometimes needed help getting in and out of the bathtub but otherwise could take care of his personal needs. (Tr. 36). He mostly had given up his hobbies of hunting and fishing (Tr. 37), and passed the time by watching television and looking at newspapers and magazines (Tr. 36). He could not read very well, but could read parts of the newspaper. (Id., Tr. 28).

Mr. McGlone also said that he got along well with his friends, family, and neighbors (Tr. 50), and strangers and public places did not bother him (Tr. 51); the Amitriptyline had been prescribed only to help him sleep (Tr. 50). He had applied for work since applying for disability,[2] but had not been hired because of his knee problem. (Tr. 48–9).

Medical records from the period after December 3, 1991, the date the plaintiff alleges disability (Tr. 60, 77) are limited. Office notes from Dr. Duane Marchyn, Mr. McGlone's treating orthopedic surgeon, show that on June 25, 1987 he diagnosed the plain-

---

1. More precisely, the grids determine whether substantial gainful work is available in the national economy for a particular individual. *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir.1983).

2. Notably, the record contains a physical examination for a trucker's job from early, 1992 as a part of which McGlone had apparently told the doctor that he had no permanent disabilities. (Tr. 138–139).

tiff with a probable tears of the anterior cruciate ligament and medial meniscus of the right knee. (Tr. 127). Reportedly this had occurred a month earlier, but he had not sought medical attention until the previous day. (Id.). After arthroscopy in July brought only temporary improvement (Tr. 127–8), Dr. Marchyn performed an anterior cruciate ligament reconstruction in October (Tr. 128–9), which seemed successful at first. However, something happened in January 1988 to cause the knee to become "sloppy" again (Tr. 30). A brace was fitted but the knee remained unstable (Tr. 131). In September 1989 Dr. Marchyn performed an operation to insert a Gore–Tex anterior cruciate ligament. (Tr. 121–4, 132). Again the procedure seemed reasonably successful at first, but in November, 1989, Mr. McGlone appeared at an appointment with pitting edema throughout his right leg, apparently the result of dragging two deer 20 feet after shooting them. (Tr. 132). This was only temporary, evidently, and Dr. Marchyn released him to return to work on February 1, 1990. (Tr. 133). On later visits in 1990 the plaintiff was back at work, and x-rays of his knee were satisfactory though he still complained of some instability and pain. (Tr. 133–4). Dr. Marchyn did not examine Mr. McGlone between April, 1991 and July, 1992. (Tr. 134). There was an obvious effusion of the right knee and a narrowing of the medial compartment, which could have been due to arthritic changes or synovitis from a partial or complete failure of the Gore–Tex graft. (Tr. 134). Dr. Marchyn wanted to do another arthroscopy, but evidently this procedure was never performed. In a telephone contact with a state agency physician, Dr. Marion Brown, Dr. Marchyn reported that the surgery had not been done as of September, 1992. (Tr. 66).[3] Dr. Marchyn reported that Mr. McGlone was currently capable of only sedentary work but might improve to light work if he had the recommended surgery. (Id.).

There are also brief notes from Dr. Grant Stevenson, who treated the plaintiff for various transient illnesses (Tr. 136–7) as well as a complaint of shoulder pain in October, 1992

(Tr. 141). Dr. Stevenson referred him to Dr. Charlotte Harris, an orthopedic surgeon, who performed one examination in November, 1992. The patient reported instability and giving away of his right knee, pain on resisted rotation of his right shoulder, and tenderness in the subacromial bursal area. (Tr. 143). There was also intermittent minor numbness on the dorsum of his right wrist, thumb, and index finger. (Id.). On physical examination, however, Dr. Harris found that he had a full range of motion, good strength, and was neurovascularly intact with normal reflexes throughout the upper extremities. She felt that his shoulder problem was bursitis and tendinitis and gave him a cortisone injection for pain relief. (Id.). His major problem was his knee instability; he had a "3 + anterior drawer and marked pivot shift phenomenon" but was stable medially and laterally. (Id.). In her opinion, he needed another anterior cruciate ligament reconstruction, and planned to refer him to Dr. Noyes or Dr. Heidt in Cincinnati to have this done. (Id.). Evidently he preferred not to proceed, and there are no records of further visit to Dr. Harris or any other physician.

Dr. Brown, the non-examining state agency physician, prepared a physical residual functional capacity assessment limiting the plaintiff to medium level exertion, standing no more than 3–4 hours in an eight-hour day, occasionally climbing ramps or stairs, and never climbing ladders, ropes, or scaffolds. (Tr. 89–93). This evaluation was affirmed by another non-examining state agency doctor, W.H. McKenna. (Tr. 95).

The ALJ noted in his decision that no physician had "placed any restrictions" upon the claimant (Tr. 15), but this significantly overlooks treating physician Marchyn's opinion to Dr. Brown that Mr. McGlone was capable of sedentary work (Tr. 66). However, this oversight is harmless in view of the ALJ's ultimate limitation of the plaintiff to sedentary work, which was also consistent with the plaintiff's testimony at the hearing. (Tr. 42–3). Although counsel for the plaintiff objects that the ALJ exaggerated the level of

**3.** Mr. McGlone stated at the hearing that he had stopped seeing Dr. Marchyn (Tr. 46) because

"every time I turn around, they want to make a guinea pig out of me and cut." (Tr. 47).

the plaintiff's daily activities, the fact remains that the level of daily activities he described do not indicate total physical incapacity. In addition, the fact that he applied for work after his alleged onset of disability does not make his complaint more credible.

█ Counsel's principal contention on appeal is that the ALJ erred in applying the grids to determine whether Mr. McGlone was disabled, since his claimed limitations on reaching and pushing were non-exertional limitations. However, the Sixth Circuit has held that "it is only when the non-exertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level that non-exertional limitations be taken into account and a non-guideline determination made." *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 528 (6th Cir.1981). The mere possibility of a non-exertional limitation, or only a minor one, is not enough to preclude application of the grids; the claimant "must show an impairment that significantly limits his ability to do a full range of work at a designated level." *Kimbrough v. Secretary of Health and Human Services,* 801 F.2d 794, 796 (6th Cir.1986).

█ As in *Kimbrough,* the ALJ in the instant case did not specifically state that the plaintiff's shoulder problem was not serious enough to prevent him from performing a full range of sedentary work, but his finding that he was capable of "sedentary work, generally" has the same effect. There is no evidence from any medical source to indicate that his shoulder would cause any *functional* limitations; the only evidence on this score comes from the plaintiff's own testimony that it was painful to reach overhead or push. Dr. Harris, as noted, implied that his shoulder problem was minor. Thus, although Social Security Ruling 85–15 provides that significant limitations on a claimant's ability to reach and handle may eliminate a large number of occupations, the plaintiff has not objectively demonstrated that his shoulder impairment would create any *significant* limitation on his abilities, especially in the context of sedentary level work.

Counsel also points out that sedentary level jobs require some standing and walking, and the plaintiff's knee problem limits his ability to do both these things. This is correct, but Mr. McGlone's level of daily activities, as he describes them, also require a certain amount of standing and walking. The plaintiff has not alleged that he is incapable of performing the minimal amount of standing and walking contemplated by the definition of sedentary work in the regulations. 20 C.F.R. Sections 404.1567(a); 416.967(a).

█ The plaintiff challenges the determinations regarding his mental status and illiteracy level. The plaintiff, a high school graduate, had testified that he was able to read letters received from Social Security. (Tr. 44, 108). The claimant himself did not refer to any mental disability when he filed for benefits (Tr. 105) or, seemingly, at the hearing (Tr. 41). No evidence from any mental health professional or vocational specialist examiner suggests mental or literacy deficiency. This argument is, then, rejected.

Finally, the plaintiff argues that he is entitled to a closed period of disability. Even assuming he were otherwise eligible for such benefits, a contention vigorously disputed by the Commissioner, the undersigned does not believe the evidence clearly supports McGlone's contentions.

The decision will be affirmed.

### ORDER

In accordance with the Memorandum Opinion simultaneously entered in the above-styled action,

IT IS HEREBY ORDERED that:

(1) the Plaintiff's Motion for Summary Judgment is DENIED;

(2) the Defendant's Motion for Summary Judgment is GRANTED; and

(3) the administrative decision will accordingly be AFFIRMED by separate Judgment entered this same date.

### JUDGMENT

In compliance with Fed.R.Civ.P. 58,

IT IS HEREBY ORDERED AND AD-JUDGED that:

(1) the administrative decision is AFFIRMED; and

(2) the above-styled action is STRICKEN from this Court's active docket.